E. F. KISTNER, doing business as KISTNER FUNERAL HOME, Appellant, v. IOWA STATE BOARD OF ASSESSMENT AND REVIEW, Appellee.

No. 44369.

June 21, 1938.

Swisher, Swisher & Cohrt, for appellant.

Clair E. Hamilton, for appellee.

MITCHELL, J.—This is an appeal from the assessment of a retail sales tax by the State Board of Assessment and Review against E. F. Kistner, doing business as the Kistner Funeral Home, in Waterloo, Iowa. It was the contention of the State Board that he was a retailer under the provisions of the act and subject to the tax.

After a hearing, at which evidence was offered, the lower court found Kistner was a retailer and was liable for tax in the amount of $49.24, together with penalties. He was dissatisfied with this finding and has appealed.

E. F. Kistner is the owner and operator of a business known as the Kistner Funeral Home, and has been so engaged since February 23, 1902. He did not take out a retail sales tax permit, and on February 26, 1935, was notified by the Iowa State Board of Assessment and Review to file a retail sales tax return for certain periods, which were specified. He made no returns, and on the 29th of March, 1935, the Board, by action taken, charged him with an assessment for retail sales tax, together with penalties. Notice of such assessment was given to him by the Board, and he appealed to the district court of Black Hawk County, Iowa.

The record shows that when the relative or person desiring burial for the deceased comes to appellant he finds out that party's wishes for the disposal of the body, the character of the service to be held, whether public or private, whether for burial or cremation, whether he must look after fraternal associations, the kind and formation of cortege, the standing of deceased in the community, the financial worth and ability to pay and the kind of protective casket desired. After determining this, he takes the parties into the casket room for the selection and approval of the casket, and makes a price upon his services with the use of a particular casket, and other personal property that he is to furnish. After the casket to be used is selected he enters into a written contract with the party or parties. A copy of that contract is set out in the record. This contract is very carefully worded and provides that Kistner is selling service only and not personal property. No reference is made to the price of the casket or vault. The amount stated is for the service to be rendered, which includes the casket and the vault that have been chosen. Appellant claims he has not sold or offered for sale any casket or other items of personal property entering into his service and apart from the service, and would not make any such sale if anyone undertook to buy or wanted to buy the items separately. The contract enumerates the items included in the service, such as benefit of time, skill, counsel and advice in making and completing arrangements, care, preparation of body, use of equipment, hearse, sedan, supervision and direction of funeral

rites, use of funeral home, use of approved protective wood burial casket and protective burial box, dressing body, grave marker, slippers, acknowledgment cards and envelopes. The services vary in the various contracts, depending upon the desires and wishes of the parties.

It is appellant's contention that he is not a retailer of the caskets, burial vaults, shipping cases and other tangible personal property, but that he is the user or consumer of said article; that he is not required to take out a permit as a retailer and is not required to collect tax on the retail sales of said caskets, burial vaults, etc.; that the tax, if any, should be collected from him by the person who sells said tangible personal property to him, whereas it is the contention of the State Board of Assessment and Review that the said tangible personal property, when sold to appellant, is not sold to a consumer or user; that the appellant is engaged in business as a retailer; that he does not use or consume the said articles but sells them at retail and he is therefore required under the provisions of chapter 82 of the Acts of the 45th General Assembly, Extra Session, to collect a two per cent tax upon such sales and that he is also required to obtain a permit to engage in or transact business as a retailer within the State of Iowa.

I. The first contention of appellant is that he is not selling tangible personal property but is using the caskets, vaults, and other tangible personal property and converting the same from personal property to real property.

Section 9930, par. 2, of the Sales Act defines "sale" as: "A sale of goods is an agreement whereby the seller transfers the property and goods to the buyer for a consideration called the price."

Section 6943-f38, par. b, Code of 1935, a part of the Sales Tax Law, provides: " 'Sale' means any transfer, exchange, or barter, conditional or otherwise, in any manner or by any means whatsoever, for a consideration."

Appellant contends that in order to have a transfer of property there must be a transferee, and that under the contract he enters into with the parties purchasing the service from him there is no transferee. He says it cannot be the deceased as no contract or transaction can be made or had with one deceased; that the furnishing of a funeral service and the use therein of tangible personal property, in so far as the deceased or his legal

representatives are concerned, is not the creation of a debt against the deceased or his estate; that under the contract he has agreed to furnish a complete service and his services are not completed until the body is returned to the earth, when he relinquishes possession and his rights and interests in and to the personal property used; when the corpse, together with the burial equipment such as the casket, vault, slippers, or other personal property, is placed in the ground, it attaches to and becomes a part thereof; that he thus converts such property which he uses in the service from personalty to realty; that no one acquires any personal property from him; the contracting parties do not acquire any property rights in and to the burial equipment used. Appellant cites certain cases to support this contention. The first is that of Foley v. Brocksmit, 119 Iowa 457, 93 N. W. 344, 60 L. R. A. 571, 97 Am. St. Rep. 324. In that case there was no signed contract, nor did the heirs order the goods. The funeral director was called by an outsider. The deceased in that case was a man eighty years of age. He had no relatives in the vicinity. He had been a janitor in the general offices of a railroad company for years. His associates were generally laboring men, and his most intimate friend was a street sweeper. He left an estate of approximately $5,000. The sole question involved in that case was whether or not the undertaker could enforce a claim against the estate for more than a reasonable amount for the burial of a person in that particular station. It seems that the undertaker in that case, at his own instance, furnished silks and satins for the inside of the casket and gold trimmings for the outside. The bill that he rendered amounted to $526. The court, speaking thru the late Justice Deemer, at page 458 of 119 Iowa, page 345 of 93 N. W., said:

"Such charges are not, strictly speaking, debts due from the deceased, but charges which the law out of decency imposes upon his estate. And, so far as these are reasonable in amount, they take legal priority of all such debts; as, likewise, do the administration charges. A decent burial should comport with the social condition of the deceased and the amount of his fortune." And at page 461 we read: "The idea that a man dying leaving an estate of less than $5,000 should have a casket costing $425, and that his estate should be burdened with funeral expenses amounting to $526, is little short of ridiculous. Courts

will not permit such an injustice no matter what the finding of the jury."

Appellant also cites the case of Anderson v. Acheson, 132 Iowa 744, 110 N. W. 335, 9 L. R. A. (N. S.) 217, but that is a case in which the casket and corpse are buried. A different situation prevails when the contract is signed and the goods furnished. Appellant does not still own the casket, shroud or vault; when he enters into the contract with the relatives of the deceased, they agree to pay him a certain amount of money, and he agrees to conduct the funeral and furnish certain articles of personal property. There is a transfer of title to the person who orders the goods, and it makes no difference how the goods are furnished; the person who signs the contract acquires title to the personal property and until it is buried in the ground he has a right to do whatever he wants to with it.

II. It is next contended by the appellant that he does not come within the provisions of the Act because he is not engaged in selling at retail in the State to consumers or users, but is engaged in rendering professional service, under the terms of the contract into which he enters.

Section 6943-f38 of the 1935 Code is as follows:

" * * *

"c 'Retail sale' or 'sale at retail' means the sale to a consumer or to any person for any purpose, other than for processing or for resale, of tangible personal property and the sale of gas, electricity, water, and communication service to retail consumers or users.

"d 'Business' includes any activity engaged in by any person or caused to be engaged in by him with the object of gain, benefit or advantage, either direct or indirect.

"e 'Retailer' includes every person engaged in the business of selling tangible goods, wares, or merchandise at retail, or the furnishing of gas, electricity, water or communication service, and tickets or admission to places of amusement and athletic events as provided in this division."

Section 38 of the Act is as follows:

"Tax imposed. There is hereby imposed, beginning the first day of April, 1934, and ending April 1, 1937, a tax of two per cent (2%) upon the gross receipts from all sales of tangible

personal property, consisting of goods, wares, or merchandise, except as otherwise provided in this division, sold at retail in the state of Iowa to consumers or users; * * *.''

█ Thus we find that the legislature has defined certain terms, and the court will follow the definition furnished by the legislature. The legislature in adopting the statute under consideration defined a ''sale'' to mean ''a transfer, exchange, or barter, conditional or otherwise, in any manner or by any means whatsoever, for a consideration.'' It also defined a ''retail sale'' or ''sale at retail'' as ''the sale to a consumer or to any person for any purpose, other than for processing or resale.'' There is no claim that appellant is processing. It also defines ''business'' as including any activity engaged in by any person or caused to be engaged in by him with the object of gain, benefit or advantage, either direct or indirect. Paragraph ''$e$'' then defines ''retailer'' to include every person selling tangible goods, wares or merchandise at retail.

█ No doubt this case would not be before this court if it were not for the contract which appellant had prepared, and into which his customers entered with him. However, the fact that he does enter into a written contract does not of itself make the transaction a contract for service rather than for service and sale of personal property. He can call this what he pleases. The question is, what is it under the statute?

The record in this case is exceedingly interesting to read, especially to one not familiar with the undertaking business. It is a story not of the high cost of living but the high cost of dying, and how small is the cost of the casket that one's relatives, friends, or perhaps the county, pick for him, compared with the cost of the entire funeral. There are attached exhibits setting out these facts, in fifty-three funerals that Kistner conducted. They show the name of the deceased, date of the contract, and the fee. Exhibit 10 shows the supplies used and the cost thereof. We will refer to a few of them:

Contract No. 2:
Kistner received a fee of $250.00
Cost of the casket and vault was $49.96.

Contract No. 10:
Kistner received a fee of $375.00.
Cost of the casket and vault was $68.04.

Contract No. 4:

Kistner received a fee of $517.50.

Casket, vault and slippers cost $83.74.

Contract No. 36:

Kistner received a fee of $800.00.

Casket, vault and slippers cost $176.93.

In other words, the profit increases with the use of the more expensive casket. It does not increase exactly in proportion but almost so. We quote from the reply brief of the appellant:

"Further analysis reveals that in the $175 fee cases the variation of excess of fees over cost is from 4.65 to 5.14 times; in the $200 cases from 5.52 to 6.01 times; in the $250 fee cases from 4.03 to 5 times; and the $300 fee cases from 4.19 to 5.88 times; the $350 fee cases from 4.27 to 6.01 times; the $375 fee cases from 4.19 to 5.51 times. The analysis of the cases and the difference or excess of the fee over the cost of the property used in each case clearly reveals the fact that no percentage mark-up has been adopted by the appellant and that his testimony that only the cost of the tangible personal property used enters into a consideration of the fee is a fact. It clearly reveals that his service fee is based upon the ability of the parties to pay. It is, of course, true that the amount by which the fee exceeds the cost of the property used increases as the amount of the fee increases in practically every case, which fact substantiates testimony of the appellant that he is not compensated, or adequately compensated, for his services in the lower priced cases and makes up for such inadequacy in the higher priced cases."

While it appears that there is not any set amount of mark-up on the various caskets, this record shows that the increase is rather consistent, and that it is approximately five times the cost of the personal property used by appellant. It further shows that in the fifty-three cases which he has set out in the exhibits, tangible personal property used by appellant in his various services was of a total value of $2,462.88 or but 21 per cent of the total contract fees, which amounted to $11,622; in other words, approximately five times the cost of the personal property used.

Cases involving these propositions are not many. Sales tax enactments are new and the courts have not as yet been con-

fronted with the many propositions which no doubt will be presented later.

The Supreme Court of Illinois in Brevoort Hotel Company v. Ames, 360 Ill. 485, 196 N. E. 461, had before it the question of whether persons engaged in serving meals in restaurants or dining rooms in a hotel conducted on the so-called ''European plan'' are ''persons engaged in the business of selling tangible personal property at retail,'' within the meaning of the Illinois Retailers Occupation Tax Act. It was the contention there that the act did not apply to its business because it could only include those persons reasonably classified as retailers or traders; that the business of an inn keeper or hotel keeper is not a retail or trading business, and that the serving of a meal to a patron of a hotel is not a sale within the ordinary meaning of that term. In passing upon the question the Illinois court made this statement:

''Section 1 of the act (Smith-Hurd Ann. St. c. 120, §440) defines a 'sale at retail' as 'any transfer of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration.' Section 2 (section 441) provides that 'a tax is imposed upon persons engaged in the business of selling tangible personal property at retail in this State at the rate of two per cent (2%) of the gross receipts from such sales in this State of tangible personal property made in the course of such business.' There can be no doubt under the provisions of the act but that the food served in a restaurant or hotel is tangible personal property, and that it is served at retail 'for use or consumption and not for resale in any form as tangible personal property.' '' Page 462 of 196 N. E.

On page 463 of 196 N. E., we find the following:

''We are of the opinion that the business of serving food in a restaurant or so-called European plan hotel involves every element of a sale which need here be noticed. So far as concerns this case, it is necessary only to ascertain whether the serving of food involves a 'transfer of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for re-sale in any form as tangible personal property.' Until the food is served to the guest, the title or owner-

ship is in the proprietor. It is no longer owned by the proprietor once it has been delivered to the guest for consumption. A transfer of ownership within the meaning of the act is the necessary result of such a transaction. The food is furnished to the guest for 'consumption' within the meaning of the act, and the mere fact, therefore, that it is to be consumed does not militate against the view that a sale takes place. When it is served for consumption, it is a sale at retail, as defined by this act. For all practical purposes, the guest becomes the owner of it, and may do with it as he pleases. He may consume it or may so deal with it as to render it thereafter unfit for consumption and thus destroy its value. Just as the guest is given absolute control and disposition of the food, so, too, the proprietor is deprived of any ownership of or control over the food. The ordering and service of meals at restaurants and hotels differs only in degree and method from other types of clerical, wrapping or delivery service rendered in the purchase of a hat or a pair of shoes. In fact, service of some kind features practically every sale of merchandise. In all such cases the food or clothing or other tangible personal property bought is the substance of the transaction, and the various services rendered in its delivery to the purchaser for use or consumption are only incidental thereto.''

The Court of Appeals of the State of Kentucky in Cusick et al. v. Commonwealth, 260 Ky. 204, 84 S. W. 2d 14, had before it the question of whether photographs were subject to the three per cent sales tax. In that case it was contended that their work consisted entirely of labor and their business was one of personal service rather than the selling of tangible personal property. That court said, at page 15 of 84 S. W. 2d:

''Coming to the argument that a photographer is engaged in selling service, and that service is not taxable, it must not be overlooked that the chief value of many articles consists in the cost of the service and skill by which they are produced, rather than the cost of materials out of which they are made. Moreover, the situation is not the same as if the patron took an article to another to be repaired and paid only for the service rendered. One who desires a photograph of himself or his family does not contract simply for service. He desires the finished article, and that is what he buys and what the photographer sells. It is true that the photograph is of a particular person, and that the

market is limited, but that is more or less true in every case where clothing or other articles are made to order for a particular person, or a particular purpose, and are not regularly kept on hand.''

And so in the case at bar, while it is true that the undertaker renders service, and valuable service, for which he is entitled to adequate compensation, he is also engaged in the sale of tangible personal property—the casket, the vault and other necessary equipment. He does not consume the articles as a plumber or welder would consume gas or electricity in a torch or welding device. He is not a processor. He does not use the articles in the manufacture of other articles. He is not changing their form. He transfers the very articles to the purchaser. He purchased the articles for re-sale and did re-sell them to the user. He comes clearly under the provisions of the act. He must look to the legislature for the relief he desires; the court can only construe the law as it finds it. It does not make the laws.

▉ III. We come now to the last proposition argued, that is, that Rule 49 has no binding force and is a nullity.

Rule 49 of the Retail Sales Act we find is as follows:

### ''Undertakers and Funeral Directors.

''A funeral director or undertaker is engaged in the business of selling tangible personal property to consumers, including such articles as caskets, grave vaults, and occasionally, grave clothing and flowers. He is also engaged in the business of rendering services such as embalming and providing livery service and other equipment in the conducting of funerals. A funeral director is liable for tax measured only by his gross receipts from sales of tangible personal property. No tax arises on receipts from services which he renders such as those which were enumerated above.

''In certain instances funeral directors and undertakers make a practice of charging lump sums to customers covering the entire cost of the funeral, and they prefer not to separate the charge for services and the charge for tangible personal property in the bill tendered to the customer. In such instances, they have the option of reporting to the Board the fair selling price of the tangible personal property sold and paying the tax upon gross receipts from such an amount. For the purposes of the Act, the Board will consider the fair selling price of the casket

to be a price double that at which the casket was purchased by the funeral director. Gross receipts from the sale of grave clothing, vaults, flowers or other tangible personal property should in this case be included to the amount of their actual selling price to the consumer.

"In any case, it is the intention of the Act that the funeral director shall pay the tax measured by his gross receipts from sales of all tangible personal property as shown by the bill tendered to the customers, and it is only in exceptional instances where he does not desire to make a separation in the charges to the customer that this method of determining the selling price of the casket may be adopted.

"The funeral director must keep his books so as to show clearly these separate sources of receipts, and invoices and sales records must clearly reflect the selling price of tangible personal property sold."

Under the provisions of the statute the Iowa State Board of Assessment and Review is given the right to adopt rules.

Section 6943-f55 of the 1935 Code is as follows:

"Powers and duties.

"1. The board shall have the power and authority to prescribe all rules and regulations not inconsistent with the provisions of this chapter, necessary and advisable for its detailed administration and to effectuate its purposes.

"2. * * *."

It is conceded by the appellant that the Board is given the right to make rules and regulations, but that this right is limited to such rules as carry out the provisions of the act. The Board does not have the right to legislate, and it is conceded by the attorneys for the appellee that it has no authority under the statute to adopt rules which are in the nature of laws. It cannot make a retailer out of someone who is not under the act a retailer. Neither can the Board make a retail sale out of a wholesale sale.

We turn to Rule 49, which is set out above. Clearly, it is a rule passed for the sole purpose of empowering the Board to carry out the provisions of the statute. Is it a reasonable rule? It provides that a funeral director is liable for a tax, measured by his gross receipts from the sale of tangible personal prop-

erty, and that no tax arises on receipts from services which he renders. The second paragraph of the rule provides that those funeral directors and undertakers who make a practice of charging lump sums to customers covering the entire cost of the funeral, may have the option of reporting the fair selling price of the tangible personal property sold and paying the tax upon gross receipts from such an amount, or, in the absence of a showing, the Board will consider the fair selling price of the casket to be double the amount which the funeral director paid for it. It is hard to conceive how anyone could argue that this is an unreasonable regulation. The funeral director is required to pay only on his gross receipts from sales of tangible personal property, and is not required to pay a tax on the service that he renders. If he does business as Kistner does, by charging a lump sum, he has the option of reporting the fair selling price of the tangible personal property and paying tax upon the gross receipts from such amount, or, the Board will consider the fair selling price of the casket to be double the amount which the funeral director paid for it. Such a rule is a reasonable regulation, for the purpose of governing the future collection of the tax from all of the funeral directors in Iowa.

It necessarily follows that the case must be, and it is hereby, affirmed.—Affirmed.

Chief Justice and all Justices concur.