JAMES D. HOLLAND et al., appellants, v. STATE OF IOWA, INSURANCE DEPARTMENT and W. E. TIMMONS, Commissioner of Insurance, appellees.

No. 50647.

MAY 8, 1962.

Max Putnam, of Des Moines, and Scott Swisher and Marion R. Neely, both of Iowa City, for appellants.

Evan Hultman, Attorney General, and Wilbur N. Bump, Solicitor General of the State of Iowa, for appellees.

THOMPSON, J.—The major question before us on this appeal concerns the right of the Commissioner of Insurance of the State of Iowa to revoke the licenses of the plaintiffs to engage

in the insurance business in the State. The commissioner, after hearing upon complaint filed, found each plaintiff guilty of illegal practices, specifically of what is known as "twisting", and revoked their licenses. Upon appeal the trial court dismissed the plaintiffs' petition for review under section 507B.8, Code of 1958, and annulled the writ of certiorari which had been issued. The plaintiffs appeal to this court.

■ I. Statutes which regulate the insurance business are within the police power of the State. This business is one peculiarly impressed with a public interest and subject to public supervision and control. Bankers Life and Casualty Co. v. Alexander, 242 Iowa 364, 373, 374, 45 N.W.2d 258, 263, 264, and citations.

■ II. Section 507B.4 of the 1958 Code says in part:

"The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:

"* * * making any misrepresentation to any policyholder insured in any company for the purpose of inducing or tending to induce such policyholder to lapse, forfeit, or surrender his insurance."

This defines what is known in the insurance trade as "twisting". It is aimed at any attempt by misrepresentation to induce a policyholder to surrender a policy in one company in order that he may be sold a policy in another company. It is universally condemned as unethical and is generally prohibited by statutes. That the power of the State to prohibit it and to prescribe penalties for its practice is within the police power cannot be denied. As the commissioner said in the case before us: "The great loss to the unsophisticated policyholder is rights that he has earned through the holding of a policy, such as waiting periods, intervening illness, and such other policy defenses." There was competent and substantial evidence before the commissioner at the hearing that each defendant there, the plaintiffs here, had been guilty of "twisting" as defined in section 507B.4, supra.

III: However, the plaintiffs challenge the right of the commissioner to revoke their licenses, on technical grounds. A consideration of this contention requires an examination of the stat-

utes. Chapter 507B deals with insurance trade practices and sets out a number of them, including "twisting", which are condemned. Provisions are made for notice and hearing before the commissioner whenever he has reason to believe any person has been engaged in prohibited practices; and if, after hearing, he finds such person has been engaged in such practices, the remedy is defined by sections 507B.7, which provides for a "cease and desist" order, and 507B.11, which fixes a penalty for a violation of such order. Section 507B.12 says: "The powers vested in the commissioner by this Act shall be additional to any other powers to enforce any penalties, fines or forfeitures authorized by law with respect to the methods, acts and practices hereby declared to be unfair or deceptive."

No cease and desist order was issued by the commissioner in this case. He proceeded under what he thought was the authority given him not only by chapter 507B but also by section 522.3 of the Code, and Rule 12 of the insurance department, to revoke the license of each of the plaintiffs. Thereupon they brought their action in the Polk District Court asking a review under chapter 507B, supra, and a writ of certiorari based on the claim that the commissioner was acting illegally. Apparently because no cease and desist order had been issued under the provisions of chapter 507B, the trial court dismissed the petition so far as it asked a review. We think this was error, since the commissioner in his ruling referred to violations of chapter 507B, and seemed to rest it in part at least on such violations, although he did not impose the penalties specifically provided by that chapter. So plaintiffs should not have been denied their right of review. However, in view of our final conclusion as to the penalty actually imposed by the commissioner, this matter is of slight if any importance.

IV. The decisive question remains: Did the commissioner have the power to revoke the licenses? Clearly he did not have it under chapter 507B. The only penalty provided there, as we have pointed out above, was to issue a cease and desist order. But this does not exclude the power to enforce any other penalties, fines or forfeitures authorized by law. Section 507B.12, supra. The commissioner thought he had such power under section 522.3 of the Code and Rule 12 of the department.

We quote section 522.3, so far as material here: "The commissioner shall require of each first-time applicant such reasonable proof of character and competency with respect to the type and kind of insurance the applicant proposes to sell as will protect public interest, before issuing such license and may, for good cause, after hearing held within sixty days from the date of application, decline to issue such license or may, for like cause, after hearing, revoke same. * * *."

Rule 12 provides: "The commissioner will revoke the license of any agent who is found guilty of inducing any individual to lapse or cancel a policy of one insurer in order that such individual procure a policy of another insurer which in any way would operate to the prejudice of the interests of the individual."

█ Without doubt, Rule 12, supra, in terms authorizes the commissioner to revoke the licenses of persons using the methods of which substantial evidence showed plaintiffs were guilty here. But administrative rules cannot go further than the law permits. An administrative body may not use the device of promulgating rules to change or add to the law; they are not to be taken as law in themselves, but must be reasonable and used for the purpose of carrying out the legislative enactments. An administrative body may not make law or change the legal meaning of the common law or the statutes. City of Ames v. Iowa State Tax Commission, 246 Iowa 1016, 1022, 71 N.W.2d 15, 19; Kistner v. Iowa State Board of Assessment and Review, 225 Iowa 404, 415, 280 N.W. 587, 593. Accordingly, Rule 12 may not be used to revoke plaintiffs' licenses unless it is supported by statutory or common-law authority.

█ █ V. Section 522.3, supra, fails to give the commissioner the power which he attempted to exercise here. This section was amended into its present form by chapter 248, Acts of the Fifty-seventh General Assembly, which took effect July 4, 1958. Prior to that time its language was definite. It provided: "The commissioner may, for good cause, decline to issue such license or may, for like cause, revoke the same." This gave the commissioner the power to revoke any license for good cause. But as we read the language of the present statute, the commissioner is now given power to revoke only the licenses of "first-time" applicants. We have set out the material part above; and

it will be noted that after stating the requirements as to character and competency, it empowers the commissioner, after hearing held, to decline to issue "such license"; or he may, for like cause, after hearing, revoke "the same". The expression "the same" in a statute refers to something previously mentioned. Baird v. Johnston, 230 Iowa 161, 164, 297 N.W. 315, 316. The statute now seems clearly to refer only to licenses applied for, or issued, to "first-time" applicants. No power of revocation is given as to renewal licenses, which are issued yearly. The plaintiffs here have held their licenses for ten and seven years respectively; they are certainly not first-time applicants or the holders of first-time licenses.

A reading of the present section 522.3 leaves no doubt that the express power to revoke is given to the commissioner only as to first-time licenses. Prior to the amendment by the 57th G.A. he had the power to revoke any licenses for good cause. Why the change was made, why the legislature deemed it proper to give the commissioner power to revoke first-time licenses only, we do not know, nor is it important that we should understand. Ours not to reason why, ours but to read, and apply. It is our duty to accept the law as the legislative body enacts it. We do not decide what the legislature might have said, or what it should have said in the light of the public interest to be served, but only what it did say; and this we must gather from the language actually used. When a statute is plain and its meaning clear, there is no room for interpretation; or, to put it in another way, there is only one possible construction. Andrew v. Savings Bank of Larchwood, 214 Iowa 204, 207, 242 N.W. 80, 81, and many other cases have so held.

If we do not follow the clear language of a statute, or of the Constitution, but by a fallacious theory of construction attempt to impose our own ideas of what is best, even if in so doing we conceive that we are promoting the public welfare and achieving a desirable result, we are indulging in judicial legislation and are invading the province of the Legislative branch of the Government, or of the electorate in amending the basic law. The end does not in such cases justify the means. We must accept section 522.3 as the legislature wrote it, and its meaning is definite and beyond fair debate.

VI. However, we have held that the insurance commissioner has powers other than those expressly given him by statute. Section 505.8 of the Code provides in part:

"The commissioner of insurance shall be the head of the insurance department, and shall have general control, supervision, and direction over all insurance business transacted in the state, and shall enforce all the laws of the state relating to such insurance. * * *."

We discussed this statute in Bankers Life and Casualty Co. v. Alexander, supra, loc. cit. 242 Iowa 371–375 inclusive, 45 N.W. 2d 262–264 inclusive. We there cited with approval several cases which hold that under broad powers to regulate and control the insurance business of a State the insurance department may revoke licenses. These cases dealt with licenses to insurance companies; but we see no reason why the same rule should not apply to licenses to agents. If no more appeared in the instant case, we should be much inclined to hold that the commissioner had the power to revoke the plaintiffs' licenses even though no such power is expressly given by statute.

VII. But another pitfall in the commissioner's path to revocation appears, and we know of no way in which this one may be avoided. The Fifty-seventh General Assembly not only repealed the express power of revocation of licenses generally previously given the commissioner, but it limited his authority to revocation of "first-time" licenses. This brings into play the rule "expressio unius est exclusio alterius." In plain English this means that the express mention of one thing implies the exclusion of others. As we said in State v. Flack, 251 Iowa 529, 533, 101 N.W.2d 535, 538: "Thus the legislative intent is expressed by omission as well as by inclusion." We expounded and followed the rule in the Flack case, and cited authorities. Loc. cit. 251 Iowa 533, 534, 101 N.W.2d 538; and we also applied it in Dotson v. City of Ames, 251 Iowa 467, 471, 472, 101 N.W.2d 711, 714.

The rule has particular application here. The commissioner is expressly given the power to revoke "first-time" licenses. This excludes the power to revoke other licenses; the mention of "first-time" licenses excludes others. So, the intent of the legislature

being made evident that only "first-time" licenses may be revoked, its intent that other revocations are not permitted appears. It showed such intent by omitting them; and this intent must prevail over any general statute such as section 505.8, supra.

 VIII. Another applicable rule is that a change in the language of a statute ordinarily indicates an intention to change its meaning. This applies to situations such as the one we have here, where the former statute gave power to revoke all licenses but the change limited revocation to one class only. State v. Flack, 251 Iowa, supra, loc. cit. 251 Iowa 533, 101 N.W.2d 538, and citations.

The trial court was in error in dismissing the petition for review and in annullng the writ of certiorari.—Reversed.

All JUSTICES concur except MOORE, J., who takes no part.