Virginia M. KNUDSEN, d/b/a Mac's Bung-A-Lu, Appellee,

v.

State of IOWA LIQUOR CONTROL COMMISSION, Appellant.

No. 53682.

Supreme Court of Iowa.

Oct. 14, 1969.

Richard C. Turner, Atty. Gen., and William A. Claerhout, Asst. Atty. Gen., for appellant.

Hanrahan & Wasker, Des Moines, for appellee.

RAWLINGS, Justice.

Defendant liquor commission appeals from trial court's decree holding the commission acted illegally in imposing upon plaintiff-licensee an occupational tax based on other than gross receipts, in addition to that paid, plus penalty, and suspending her license pending payment of the assessment. We affirm.

The law enforcement division, Iowa Liquor Control Commission, filed a hearing complaint January 4, 1968, asserting Mrs. Virginia M. Knudsen, owner and operator of Mac's Bung-A-Lu, had violated section 123.102, Code, 1966, in failing to report or remit all taxes due.

Plaintiff appeared January 30, 1968, with counsel, and participated in the hearing without objection.

A commission accountant, Thomas E. Anderson, testified Mrs. Knudsen had remitted $8,605.31 (sic) during the period July 1963 through July 1967, when in fact there was owing by her a total of $12,899.-25.

The statutory tax for the four years here concerned was ten percent of licensee's monthly gross receipts.

Mr. Anderson's computation was based on an average of 59 cents for each ounce, being a calculated guess, based upon licensee's filed price lists, and the accountant's experience, coupled with industry reports. This witness testified there are $25\%_{10}$ ounces of liquor in a four-fifths bottle, but his calculations were premised on 23 ounces per bottle. He resultantly arrived at a tax of $1.35 due on each such container, using this mathematical formula: $23 \times .59\cancel{c} = \$13.57$, and $\$13.57 \times .10\cancel{c} = \$1.35$. As explained by him the licensee purchased 9647 bottles during the subject four years, and had 92 on hand August 1, 1967, revealing 9555 bottles of liquor had been sold. This figure he multiplied by $1.35, the computed tax per bottle, and thus arrived at the $12,899.25 found to be owing.

In effecting this computation Mr. Anderson employed a one ounce of liquor per drink standard referred to in the commission rule 26, as best we can determine now rule 27, adopted pursuant to Code section 123.17(2). That rule states: "Every licensee shall have on his licensed premises, a printed list or menu showing the various types of alcoholic drinks which he offers for sale and the prices of such drinks shall be indicated thereon. *Each licensee shall establish prices based on serving one (1) ounce of intoxicating liquor per sale.*" (Emphasis supplied)

Five witnesses, appearing on behalf of licensee, testified the drinks served in her establishment always contained one and one-half ounces of liquor. This is support-

ed by licensee's monthly reports to the commission. She also frequently conducted a "happy hour" during which sales were at half price.

Mrs. Knudsen's testimony reveals she always poured one and a half ounces rather than an ounce of liquor in each drink.

The commission ultimately found a tax balance of $4,294.94 owing by licensee, plus $5,365.50 penalty, and assessed a total of $9,660.44. Simultaneously Mrs. Knudsen's liquor license was suspended indefinitely until both tax and penalty were paid in full.

Plaintiff-licensee appealed to the district court from defendant-commission's order. Code section 123.27(7) (d).

Trial court held the commission's decision "was arbitrary and capricious and not based on evidence of gross receipts from the sale of alcoholic beverages by the licensee and constituted an abuse of discretion which is illegal and contrary to law."

On this appeal defendant-commission contends its method of determining the tax owing by licensee is supported by then existing statutory authority.

I. At the outset we are confronted with a problem involving statutory construction.

On that subject rule 344(f) (13), Rules of Civil Procedure says: "In construing statutes the courts search for the legislative intent as shown by what the legislature said, rather than what it should or might have said."

Also, this court said in General Expressways, Inc. v. Iowa Reciprocity Board, Iowa, 163 N.W.2d 413, 423: "Although it is true that courts give weight to administrative interpretation of statutes where the meaning admits of doubt and the rule is of long standing (Authority cited) it is well settled in this state that in the interpretation of taxing statutes doubtful language is to be resolved in favor of the taxpayer and against the taxing body." See also In re Estate of Schnepp, 258 Iowa 333, 335, 138 N.W.2d 886; Randolph Foods v. State Tax Commission, 258 Iowa 13, 17, 137 N.W.2d 307; Farnsworth v. Iowa State Tax Com-

mission, 257 Iowa 280, 281, 132 N.W.2d 477; and 82 C.J.S. Statutes § 396, page 946. And we have repeatedly held the legislature may be its own lexicographer. See Graham v. Worthington, 259 Iowa 845, 853, 146 N.W.2d 626, and citations.

II. An attendant question is presented relative to the rule making power of an administrative body.

This court was called upon to consider that matter in Holland v. State of Iowa, 253 Iowa 1006, 115 N.W.2d 161, and there said, loc. cit., 253 Iowa 1010, 115 N.W.2d 163: "* * * administrative rules cannot go further than the law permits. An administrative body may not use the device of promulgating rules to change or add to the law; they are not to be taken as law in themselves, but must be reasonable and used for the purpose of carrying out the legislative enactments. An administrative body may not make law or change the legal meaning of the common law or the statutes. City of Ames v. Iowa State Tax Commission, 246 Iowa 1016, 1022, 71 N. W.2d 15, 19; Kistner v. Iowa State Board of Assessment and Review, 225 Iowa 404, 415, 280 N.W. 587, 593."

Additionally, it is the general rule that an administrative agency action which is contrary to or beyond the power granted it by law is arbitrary, capricious, unreasonable or an abuse of discretion, and is not redeemed by presence of good faith or high purpose. See 73 C.J.S. Public Administrative Bodies and Procedure § 209, page 567, and 2 Am.Jur.2d, Administrative Law, sections 650–651, pages 503–512.

III. With regard to computation of the tax due by licensees on liquor sales, during the period here involved, section 123.97, Code, 1966, provided: "There is hereby imposed on every individual, partnership, corporation, association or club licensed to sell alcoholic beverages for consumption on the premises where sold, an occupational tax to be computed on all alcoholic beverages sold, as follows:

"An amount equivalent to ten percent *upon the gross receipts* of any licensee

from all sales of alcoholic beverages in the state of Iowa. This occupational tax on gross receipts shall be in lieu of sales tax thereon." (Emphasis supplied).

Even more significantly section 123.100 stated: "'Gross receipts' as used in this chapter, means the amount received in money, credits, property or other moneys worth in consideration of sales of such alcoholic beverages within this state, without any deduction on account of the cost of the property sold, the costs of the materials used, the cost of labor or services, purchases, amounts paid for interest or discount, or any other expenses whatsoever. No deductions shall be allowed for losses of any nature."

Without question sections 123.97 and 123.100, quoted supra, lend strong support to plaintiff's position relative to the occupational tax due and paid according to the reports regularly filed by her with the commission.

It is to us apparent defendant's imposition of an additional tax upon plaintiff, based on a computed unit purchase formula, constituted an effort to adopt and apply what may best be described as a "bottle tax" for which there then existed no statutory authority.

This is revealed by Code section 123.100, quoted above, which plainly states that at the time here concerned the tax owing by liquor licensees was limited to "gross receipts", meaning in substance the total received by a licensee in money or its equivalent from the sale of alcoholic beverages. There is no choice for us but to accord this clearly expressed legislative enactment full recognition. Any other approach would require that we engage in judicial legislation, thereby invading the province of the legislative branch of our state government.

Moreover, the variance in taxing of gross receipts on one hand, and use of a so-called unit or bottle tax on the other, was apparently recognized by our law making body when, in 1967, it repealed Code sections 123.97–123.100 and enacted in lieu thereof, (section 1, chapter 158, Acts of the Sixty-Second General Assembly) the following: "There is hereby imposed on every individual, partnership, corporation, association or club licensed to sell alcoholic beverages for consumption on the premises where sold, a special tax equivalent to fifteen (15) percent of the price established by the commission on all alcoholic beverages for general sale to the public. Such tax shall be paid by all licensees at the point of purchase from the state on all alcoholic beverages intended or used for resale for consumption on the premises of retail establishments. Such tax shall be in lieu of any other sales tax applied at the state store and shall be shown as a separate item on special sales slips provided by the commission for purchases by licensees."

▮ Absent any other explanation it would appear commission rule 27, quoted supra, is a price reporting proviso. In any event when defendant commission attempted to convert it into a standard by which to mathematically calculate taxes due on a unit basis, it erroneously endeavored to change the clearly expressed meaning of Code section 123.100 relative to gross receipts. This can only be characterized as an attempt by an administrative body to make law or change the meaning of a clearly expressed definitive statute. By the same token it was in excess of the power granted by law. Resultantly, defendant-commission, even though honestly motivated, must be held to have here acted arbitrarily and capriciously.

IV. Mindful of the foregoing there is no need to engage in any extended discussion regarding defendant's claim that even if plaintiff had made all sales at 40 cents for each drink there would still be $186.29 owing by her. This amount was also determined by use of the bottle purchase computation held by us, supra, to be improper under the law then in effect.

Affirmed.

All Justices concur, except MOORE, J., who takes no part.