MOTOR CLUB OF IOWA,
**Plaintiff-Appellee,**

v.

**DEPARTMENT OF TRANSPORTATION**
**of the State of Iowa et al.,**
**Defendants-Appellants,**

Crouse Cartage Company and H and W
Motor Express Company,
**Intervenors-Appellants.**

No. 2–59619.

Supreme Court of Iowa.

March 16, 1977.

Richard C. Turner, Atty. Gen., and Fred M. Haskins, Asst. Atty. Gen., for defendants-appellants.

Steven C. Schoenebaum, of Swift, Brown & Winick, Des Moines, for intervenors-appellants.

R. Richard Bittner and Larry L. Shepler, of Betty,. Neuman, McMahon, Hellstrom & Bittner, Davenport, for plaintiff-appellee.

HARRIS, Justice.

This suit was brought to challenge a rule adopted by the commission of the Iowa department of transportation (DOT) establishing a 65 foot length limitation for trucks. In setting the effective date of the rule the DOT specified two conditions. The rule allowing 65 foot trucks was to be effective when the General Assembly passed legislation (1) outlawing studded tires and (2) implementing functional classification of highways. Neither condition was met.

The trial court held the rule was invalid on alternative grounds (1) the conditions, if not ultra vires, were not met and (2) if ultra vires were not separable from the DOT's rule fixing the 65 foot limitation. We find the conditions were ultra vires and inseparable. The rule was accordingly void in its entirety. We affirm the trial court.

Chapter 307, The Code, establishing the DOT, was passed by the 65th General Assembly. The duties of the DOT were outlined in § 307.10, The Code. Special authority with regard to vehicle length restrictions was given in § 307.10(5), The Code, which provides:

"[The commission shall]

"5. Adopt rules in accordance with the provisions of chapter 17A [administrative procedure act] as it may deem necessary to transact its business and for the administration and exercise of its powers and duties.

*The transportation commission shall also adopt rules, which rules shall be exempt from the provisions of chapter 17A, governing the length of vehicles and combinations of vehicles which are subject to the limitation imposed under section 321.457. The commission may adopt such rules which permit vehicles and combinations of vehicles in excess of the length limitations imposed under section 321.457, but not exceeding 65 feet in length, which may be moved on the highways of this state. Any such proposed rule shall be submitted to the General Assembly within five days following the convening of a regular session of the General Assembly. The General Assembly may approve or disapprove the rules submitted by the commission not later than 60 days from the date such rules are submitted and, if approved or no action is taken by the General Assembly on the proposed rules, such rules shall become effective May 1 and thereafter all laws in conflict therewith shall be of no further force and effect."*

This suit was filed February 16, 1976. Plaintiff's standing to sue was challenged and is an issue in this appeal. Intervenors entered the suit March 17, 1976. Standing of the intervenors to defend against the suit and to appeal was established by a special order of this court after a hearing and will receive no further mention.

I. A threshold question is whether the attorney general has authority to continue prosecution of this appeal against the wishes of the DOT. The seven commissioners of the DOT are in sharp disagreement on the question of whether they should increase the lawful limit of trucks to 65 feet. A majority of the commissioners once favored the 65 foot limit, at least if studded tires were banned and functional classification of highways was implemented. But after this appeal was brought the "majority" view became the minority view. After replacement of a commissioner the DOT voted 4–3 to dismiss this appeal and to abide by the decision of the trial court.

The attorney general has refused to do so. He argues the State of Iowa is the real party in interest and contends he is a con-

stitutional officer, free to prosecute and defend any case in which the State is a party or interested. He asserts he possesses complete dominion over all litigation in which he appears in the interest of the State.

It is clear an attorney representing a private client under the same circumstances would be required to dismiss the appeal. See *State v. Schmidt,* 259 Iowa 972, 145 N.W.2d 631 (1966); *State v. Lundstedt,* 246 Iowa 355, 67 N.W.2d 450 (1954); *Garberson v. Garberson,* 241 Iowa 713, 42 N.W.2d 391 (1950); 7 C.J.S. Attorney & Client § 95, pp. 912–914; 4 C.J.S. Appeal and Error § 184, pp. 569–571; 7 Am.Jur.2d, Attorneys at Law, § 138, p. 132; 4 Am.Jur.2d, Appeal and Error, § 195, pp. 703–704; Annot., 91 A.L.R.2d 618, 619–623. The question becomes whether the attorney general's status as an elected state official appearing for a department of state government renders the ordinary rule inapplicable.

In Iowa the attorney general has only the powers given him by statute. In *State v. Blyth,* 226 N.W.2d 250, 259 (Iowa 1975) we said:

"In this state the duties and powers of the attorney general are defined by statute. He is clothed with common law powers only to the extent codified in the statute. This court has expressed the view the legislature has given him by statute all powers which in its judgment he ought to be permitted to exercise. (Authority)." See also *State ex rel. Turner v. Iowa State Highway Com'n,* 186 N.W.2d 141, 145–146 (Iowa 1971); *State ex rel. Fletcher v. Executive Council,* 207 Iowa 923, 223 N.W. 737 (1929); *Cosson v. Bradshaw,* 160 Iowa 296, 141 N.W. 1062 (1913).

We find only two statutes which might authorize the attorney general's continued participation in this suit.

Section 307.23, The Code, provides a special assistant attorney general shall serve as general counsel for the DOT. That section provides:

"The general counsel shall be a special assistant attorney general appointed by the

attorney general who shall act as the attorney for the department and he shall have the following duties and responsibilities:

"Act as legal advisor to the commission, the director, and the various divisions of the department and provide all legal services for the department except for those provided to the board by its counsel.

"The attorney general shall appoint such additional assistant attorneys general as the commission deems necessary to carry out the duties assigned to the general counsel division. * * *."

■ If the foregoing section could somehow be construed to authorize the attorney general to act as DOT's special counsel there would still be no reason to believe the relationship between the attorney general and the DOT is anything other than a normal attorney-client relationship. We think § 307.23 was enacted to provide the DOT with a salaried attorney rather than making it necessary to retain private counsel. We do not believe the legislature intended this provision to reduce the DOT's control over its own affairs or litigation. That could deny the DOT effective assistance of counsel.

Section 13.2, The Code, lists the duties of the attorney general. It provides in material part:

"It shall be the duty of the attorney general, except as otherwise provided by law to:

"1. Prosecute and defend all causes in the supreme court in which the state is a party or interested.

"2. Prosecute and defend in any other court or tribunal, all actions and proceedings, civil or criminal, in which the state may be a party or interested, when, in his judgment, the interest of the state requires such action, or when requested to do so by the governor, executive council, or general assembly.

"3. Prosecute and defend all actions and proceedings brought by or against any state officer in his official capacity."

■ It is apparent §§ 13.2(1) and 13.2(2) give the attorney general authority to prosecute or defend cases·in district or appellate courts in the interest of the state. See *State ex rel. Turner v. Younker Brothers, Inc.,* 210 N.W.2d 550 (Iowa 1973).

But the attorney general's role in this litigation was not under either § 13.2(1) or § 13.2(2). Any authority he had to appear and defend under § 13.2 stemmed from § 13.2(3). A department of state government was sued and the attorney general appeared to defend the department, not to assert his vision of state interest.

Nothing in § 13.2(3) indicates that when the attorney general appears, as he did in this case, as counsel for a department of state government his relationship with that department differs in any way from that which ordinarily exists between attorney and client. Far from imposing the will of the attorney general on a branch of government we believe § 13.2(3) merely enables state officers to utilize the services of the attorney general.

In *State ex rel. Fletcher,* supra, 207 Iowa at 925, 223 N.W. at 738 we recognized the attorney general's unique role as an advocate for various branches of state government and the tensions which may result. We said:

"The procedure adopted herein cannot be approved. As presented, the case carries some of the aspects of a moot one. The legislative call upon the Attorney General to test the constitutionality of the act, by action brought by himself, overlooked the limitations upon the power of the judiciary, and quite ignored the legitimate scope of the powers of the Attorney General. By the very nature of his office, and by statute, he is the legal adviser, both of the Executive Council and of the General Assembly. To require him to maintain this action is to put him in a position which is repugnant to his other official duties. * * *."

The attorney general cites cases from other jurisdictions to support his contention he has absolute control over litigation, not merely in the usual sense of attending the

professional matters and details, but also in alone deciding whether suit shall be brought, defended, appealed or not appealed. A number of these cases are not in point because they do not deal with the conflicts which potentially exist when an attorney general attempts to represent a department of state government and what he sees as the interests of the state in general at the same time.

Four cases cited by the attorney general arguably support the position he takes. *State ex rel. Board of Transportation v. Fremont, E. & M. V. R. Co.,* 22 Neb. 313, 35 N.W. 118 (1887); *State v. Thomas,* 80 Ariz. 327, 297 P.2d 624 (1956); *State ex rel. Young v. Niblack,* 229 Ind. 596, 99 N.E.2d 839 (1951); *Secretary of Administration and Finance v. Attorney General,* 326 N.E.2d 334 (Mass.1975).

On the other hand see *State ex rel. Amerland v. Hagan,* 44 N.D. 306, 310, 175 N.W. 372, 374 (1919) in which a North Dakota attorney general moved to strike an answer previously filed by a bureau of the North Dakota state government. The attorney general claimed he was sole legal counsel for the bureau and the only person entitled to appear in its behalf. He asserted the answer had been filed without his knowledge, consent, or concurrence. The North Dakota Supreme Court said:

"It is indeed unseemly that contentious strife should be made before this court between parties appearing for the respondents. These matters of contention will be noticed only to the extent of stating that the time has not yet arrived in this state when any board or officer of the state does not possess the same right as any individual to defend itself or himself by itself or himself in the courts of this state. Furthermore although it is perfectly obvious under the statute that the attorney general is the general and legal advisor of the various departments and officers of the state government, and entitled to appear and represent them in court, this does not mean that the attorney general, standing in the position of an attorney to a client, who happens to be an officer of the government, steps into the shoes of such client in wholly directing the defense and the legal steps to be taken in opposition or contrary to the wishes and demands of his client or the officer or department concerned." 44 N.D. at 310, 175 N.W. at 374.

■ We believe the North Dakota court expresses the better view. An attorney general should not seek to perform his duty to represent a department of state government where the goals of the department conflict with what the attorney general believes is the state interest. State officers and state departments of government deserve adequate legal representation. No representation can be adequate unless it is without conflicts on the part of counsel.

The instant case provides a vivid example of the necessity of an agency of government having counsel unrestrained in committing their professional efforts to further the agency's goals. The commissioners of the DOT have differing views on the propriety of extending the lawful length of trucks to 65 feet. Obviously they also have views on the two conditions they interposed in the rule. Outlawing studded tires and implementing functional classification of highways may well be unanimous goals of the DOT. They may be goals of far greater importance to the commissioners than the length of trucks. Yet, acting under the authority he claims, the attorney general has from the beginning of this litigation consistently sought to have those conditions and those goals declared ultra vires and void but separable from the rule.

Arguing from the statement in the Arizona case of *Thomas,* supra, the attorney general urges his claim of total dominion over litigation is in no way dictatorial because the courts alone make final decisions. We are unpersuaded. The attorney general claims the right to decide which cases will be prosecuted or defended and which cases will or will not be appealed. He claims the right to present or not present various issues, arguments and considerations. No court can make final decisions of cases and issues not brought before it.

In our society and under our system of law the nature, scope, indeed the very existence of all rights and obligations turn on what would be decreed if those involved went to court. Governmental departments and agencies, in common with individuals, must ultimately resort to the courts and must submit to the court's decrees to effectuate their acts or to be made to comply with the lawful acts of others. Access to the courts gives life to the affairs of governmental departments and agencies. For government to properly function that access must be unimpeded.

█ To accord the attorney general the power he claims would leave all branches and agencies of government deprived of access to the court except by his grace and with his consent. In a most fundamental sense such departments and agencies would thereby exist and ultimately function only through him. See *Hagan,* supra. We believe and hold the attorney general possesses no such dominion or power.

A special problem exists where the attorney general enters litigation believing his representation of the public interest is consistent with the directions and wishes of a department or agency of government.[1] It is possible for the position of a department to change, creating a later conflict which originally seemed not to exist. Such an eventuality should not give the attorney general the power to impose his will on the department. It might well provide the basis for substitution of counsel with a tardy appearance by the attorney general in behalf of what he perceives to be the state interest.

█ We hold the attorney general was obligated to submit to the direction of the DOT and dismiss their appeal. We declare it dismissed. Such dismissal has no effect upon the separate appeal of the intervenors.

II. Intervenors claim the plaintiff Motor Club of Iowa lacks standing to bring this suit. Motor Club brought this action seeking declaratory judgment. Of the several claims asserted by Motor Club one is grounded on the federal constitution. The intervenors claim federal standing requirements govern completely Motor Club's standing in the instant case. The claim is based on a misreading of our opinion in *Iowa Civil Liberties Union v. Critelli,* 244 N.W.2d 564, 567 (Iowa 1976). *Critelli* was not a declaratory judgment action but an original action brought in this court under our supervisory power in which we were asked to nullify a local court rule. It did not hold federal standards alone are to be used to determine standing where a plaintiff relies on both federal and state claims as the basis for declaratory judgment. Rather it held federal standards may be relied on to establish standing to assert federal claims. In the instant case, for reasons which later appear, we need not and do not consider any constitutional claims, federal or state. Hence state standards control.

█ We explained the rules for determining whether a justiciable controversy exists for declaratory judgment in *Bechtel v. City of Des Moines,* 225 N.W.2d 326, 330–331 (Iowa 1975); *Farm & City Insurance Company v. Coover,* 225 N.W.2d 335, 336 (Iowa 1975) and *Green v. Shama,* 217 N.W.2d 547, 551 (Iowa 1974). Under these authorities the question is whether " * * there is a substantial controversy between parties having antagonistic legal interests of sufficient immediacy and reality to warrant declaratory judgment. * * *." *Farm & City Insurance Company,* supra, 225 N.W.2d at 336.

█ We believe Motor Club satisfied this test. They alleged (1) they are an Iowa nonprofit corporation, (2) which owns, registers, and operates 29 motor vehicles on Iowa highways, (3) owns and operates a significant motor vehicle casualty insurance company, (4) has 240,000 members who are Iowa motor vehicle owners and drivers, (5) protects the rights and privileges of its members with respect to highways, (6) will

1. This problem does not exist in the instant case because there were conflicts between the attorney general and the DOT with regard to the conditions.

suffer greater losses in its insurance company if 75,000 additional motor vehicle trips per year are added to Iowa highways, (7) will with its members suffer additional accidents and fatalities attributable to the additional trips and additional 20,200,000 motor vehicle miles annually, (8) and will with its members be required to pay for the increased costs of maintenance, construction and repair of Iowa highways. Under these allegations we believe plaintiff has asserted an infringed protected interest and facts which warrant immediate judicial intervention.

Motor Club has standing.

III. In connection with its ruling on plaintiff's standing to maintain this suit the trial court made observations concerning what it perceived as the problems and perils of truck traffic. The intervenors believe these observations were unsupported by any evidence. Consequently they believe the trial court took judicial notice of these controversial matters.

 Intervenors state a proper standard for judicial notice. To be capable of being judicially noticed a matter must be of common knowledge or capable of certain verification. *McSweyn v. Inter-Urban Ry. Co.,* 256 Iowa 1140, 1145, 130 N.W.2d 445, 450 (1964). The trial court's quoted observations, at least in part, are not matters susceptible of judicial notice. But it does appear there was substantial evidence to support the observations concerning additional vehicular traffic which would result from a 65 foot truck length limitation. We need not resolve intervenor's contention with regard to whether there was support for all the trial court's observations.

 This action stands in equity. Scope of review is de novo and, while we accord weight to the trial court's findings of fact, we are not bound by them. *Hansen v. Chapin,* 232 N.W.2d 506, 509 (Iowa 1975) and authorities. The trial court's conclusions as to the *advisability* of 65 foot trucks related only to the question of plaintiff's standing. We have found plaintiff's standing was established completely aside from any such observations.

 The trial court's observations regarding the advisability of 65 foot trucks are neither necessary nor relevant and we disassociate ourselves from them. It should be unnecessary to say a court's responsibility is to establish the facts and to apply the controlling and governing principles of law. The advisability of 65 foot trucks is a legislative, not a judicial concern. Our sworn duty is to give it no attention.

IV. There is no claim the conditions placed by the DOT upon their rule were met. The next question then is whether the conditions are ultra vires. Intervenors assert the conditions are ultra vires because the DOT can exercise only those powers conferred by its enabling statute, § 307.-10(5), and that such power has been exceeded by attaching the conditions.

Intervenors argue § 307.10(5) presupposes a specific effective date whereas the conditions cause the rule to have an indefinite effective date. Motor Club on the other hand argues the conditions are not ultra vires, that authority therefore can be gleaned from the preamble to legislation establishing the DOT and from the DOT's general statutory duties. Motor Club argues the DOT in essence said to the legislature: 65 foot double bottom trucks could only be allowed at such time as the costly effect of studded snow tires has been eliminated and at such time as additional funds have been appropriated to take care of not only primary roads but also all other classifications of roads.

Under § 307.10(5) the rules adopted by the DOT must, with one narrow exception, comply with chapter 17A, The Code (Iowa Administrative Procedure Act). The narrow exception provides for rules governing the length of certain vehicles.

The DOT did not attempt to comply with chapter 17A in adopting the rule. Therefore, unless the conditions relating to studded tires and functional classification of highways come within the narrow statutory exception to the chapter 17A requirement, those conditions exceed the statutory grant and must be deemed ultra vires. See *Iowa Dept. of Rev. v. Iowa Merit Employ. Com'n,*

243 N.W.2d 610, 614–616 (Iowa 1976); 1A Sutherland, Statutory Construction, Sands Fourth Ed., § 31.02, pp. 354–355; 73 C.J.S. Public Administrative Bodies and Procedure § 94, pp. 413–415; 2 Am.Jur.2d, Administrative Law, § 300, pp. 126–129. See also *Holland v. State,* 253 Iowa 1006, 115 N.W.2d 161 (1962); *Bruce Motor Freight, Inc. v. Lauterbach,* 247 Iowa 956, 77 N.W.2d 613 (1956).

 Under these authorities we believe the conditions attached by the commissioners were outside the statutory grant of authority for at least three reasons. First, the statutory grant of authority relating to long trucks is very specific. It is expressly limited to the long truck issue and makes no reference to rulemaking powers relative to any other duties of the DOT. Second, it must be remembered the narrow grant of authority was given as an exemption from the Iowa Administrative Procedure Act. The exemption is extraordinary and consequently should be strictly construed. Third, intervenors are right in arguing the statutory scheme does not anticipate an indefinite effective date. We think it clear the statute presupposes the effective date will be May 1 of the year a rule is submitted to the general assembly. The conditions imposed by the DOT frustrate the timing scheme of § 307.10(5).

We do not believe the legislature intended to allow the DOT to extend a standing offer, to remain pending through the years waiting acceptance by any future legislative session which might meet the conditions. We believe and hold the conditions attached by the DOT are ultra vires.

 V. Although the unfulfilled conditions are ultra vires the intervenors argue the rule allowing 65 foot trucks is still valid because the invalid conditions are separable. An agency's rules, if ultra vires in their entirety, are unquestionably void. *Iowa Dept. of Rev.,* supra, 243 N.W.2d at 615; 73 C.J.S. Public Administrative Bodies and Procedure § 103, pp. 420–424; 2 Am.Jur.2d, Administrative Law, § 300, pp. 126–129; 1A Sutherland, Statutory Construction, Sands Fourth Ed., § 31.02, pp. 354–355.

 In construing and interpreting administrative rules we apply the principles governing construction and interpretation of statutes. *Rucker v. Wabash Railroad Company,* 418 F.2d 146, 149 (1969); 1A Sutherland, Statutory Construction, Sands Fourth Ed., § 31.06, pp. 361–362; 2 Am. Jur.2d, Administrative Law, § 307, p. 135; 73 C.J.S. Public Administrative Bodies and Procedure § 105, pp. 425–426. We recently summarized the principles of construction as they relate to the question of severability in *State v. Blyth,* 226 N.W.2d 250, 261–262 (Iowa 1975). We said:

"Separability questions are essentially questions of statutory construction. (Authority). \* \* \*. '[T]he cardinal principle of statutory construction is to save and not to destroy.' (Authority).

" \* \* \*.

"Guidelines which serve as an aid in determining severability of statutes are summarized in this fashion in 82 C.J.S. Statutes § 93:

" 'Whether the valid and the invalid parts of a statute are independent and separable, or interdependent, is a question of construction and of legislative intent, as indicated by the words employed and the considerations underlying the enactment of the statute, and the question is not one of legislative power. A statute may be unconstitutional in part and yet be sustained with the offending part omitted, if the paramount intent or chief purpose will not be destroyed thereby, or the legislative purpose not substantially affected or impaired, if the statute is still capable of fulfilling the apparent legislative intent, or if the remaining portions are sufficient to accomplish the legislative purpose deducible from the entire act, construed in the light of contemporary events.

" 'If, when the invalid part is stricken, that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, or purpose, wholly independent of that which was rejected, it must be sustained to that extent; \* \* \*.' " See also *State v. Pilcher,*

242 N.W.2d 348, 359–360 (Iowa 1976); *Rush v. Sioux City,* 240 N.W.2d 431, 445–446 (Iowa 1976); *State v. Monroe,* 236 N.W.2d 24, 35–37 (Iowa 1975).

These authorities tell us the question of severability is one of intent. This intent is to be determined from the words employed and the considerations underlying adoption of the rule. A presumption is involved. It was articulated in *State v. Books,* 225 N.W.2d 322, 325 (Iowa 1975) where we said:

"Of course, where there is a severability clause in the statute itself the presumption is inescapable that this was the legislative intent. When there is no such clause, the presumption is that the statute was meant to stand or fall in its entirety. (Authorities). In all cases, the determining factor is legislative intent." See also 2 Sutherland, Statutory Construction, Sands Fourth Ed., § 44.13, pp. 359–360; *Green v. City of Cascade,* 231 N.W.2d 882, 889 (Iowa 1975); *State v. Aldrich,* 231 N.W.2d 890, 895–896 (Iowa 1975); 82 C.J.S. Statutes § 94, pp. 161–166. We note the DOT rule does not contain a separability clause.

Section 4.12, The Code, cited by intervenors, does not alter the principle that intent is the polestar in determining severability questions. The presumption described in *Books,* supra, is an aid in finding that intent. We decided *Books* after the effective date of § 4.12.

Turning to the language of the DOT rule we find no sign separability was desired. On the contrary it clearly appears the DOT intended the ultra vires provisions to be conditions precedent. It is difficult to imagine a stronger way to express the interdependence between the conditions and the long truck rule than the technique employed, setting the effective date upon satisfaction of the conditions.

Turning to the surrounding circumstances there is some conflict in the evidence. There is testimony of intended separability. But at no time did the DOT adopt a resolution favoring long trucks without the conditions. Significantly, resolutions which favored long trucks with no conditions attached had been considered and not passed. The resolution passed only when the conditions were appended. We believe the language of the rule itself and the fact the commissioners had previously refused to adopt an unconditional resolution favoring long trucks indicate interdependence and not separability of the conditions in the 65 foot rule. Certainly the presumption favoring interdependence was not rebutted.

We hold the ultra vires conditions cannot be severed and the entire rule is void. See *Books,* supra, 225 N.W.2d at 335; *Aldrich,* supra, 231 N.W.2d at 895; *Iowa Dept. of Rev.,* supra, 243 N.W.2d at 615; 1A Sutherland, Statutory Construction, Sands Fourth Ed., § 31.02, p. 355.

VI. Four constitutional arguments are advanced by Motor Club asserting § 307.10(5) is unconstitutional. Resolution of these issues is inappropriate because the dispute can and has been resolved without resorting to constitutional principles. In *City of Des Moines v. Lohner,* 168 N.W.2d 779, 782 (Iowa 1968) we said: " * * * We do not consider constitutional questions unless it is necessary for the disposition of the case. * * *." See also *State v. Ochoa,* 244 N.W.2d 773 (Iowa 1976); *State v. Thomas,* 219 N.W.2d 3 (Iowa 1974); *State v. Farrell,* 209 N.W.2d 103 (Iowa 1973); 16 C.J.S. Constitutional Law § 94, p. 317; 16 Am.Jur.2d, Constitutional Law, § 113, p. 301.

Intervenors urge two other assignments. Both depend upon a finding of separability. Our holding in division V renders them moot.

Because the conditions imposed by the Department of Transportation in the rule allowing 65 foot motor vehicles are ultra vires and not separable the DOT's rule is void. The judgment of the trial court is

AFFIRMED.