# IN THE SUPREME COURT OF IOWA

No. 09–0507

Filed July 29, 2011

**MICHAEL ANDERSON,**

Appellant,

vs.

**STATE OF IOWA,**

Appellee.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Story County, Dale E. Ruigh, Judge.

Defendant seeks sentencing credit for probationary period when he was subject to electronic monitoring and home supervision. **COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

Mark C. Smith, State Appellate Defender, and Patricia A. Reynolds, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kyle P. Hanson, Assistant Attorney General, Stephen H. Holmes, County Attorney, and Mary Howell Sirna, Assistant County Attorney, for appellee.

**WATERMAN, Justice.**

"Ours not to reason why, ours but to read, and apply. It is our duty to accept the law as the legislative body enacts it." *Holland v. State*, 253 Iowa 1006, 1011, 115 N.W.2d 161, 164 (1962) (Thompson, J.).[1] In this case we must decide whether a convicted sex offender incarcerated after revocation of his probation is entitled to credit against his prison sentence for time spent living at home under supervised probation wearing an electronic monitoring device on his ankle. The district court denied the credit, and a divided court of appeals affirmed. Although it is counterintuitive to count days living at home against a state prison sentence, we conclude the plain language of Iowa Code section 907.3(3) (2007), requires credit for the time Anderson was committed to electronic monitoring and home supervision during his probation. We therefore vacate the decision of the court of appeals, reverse the district court ruling, and remand for entry of an order providing that sentencing credit.

## I. Background Facts and Proceedings.

Defendant, Michael Leroy Anderson, was charged by trial information with two counts of second-degree sexual abuse. On April 15, 2004, Anderson entered an *Alford* plea of guilty to two counts of enticing away a minor, a class "D" felony. The district court accepted the plea and entered judgment. The district court sentenced Anderson to two

---

[1]Justice Thompson's timeless admonition regarding our court's role in statutory interpretation evokes the syntax of Alfred, Lord Tennyson's epic poem "The Charge of the Light Brigade":

> Not tho' the soldier knew
> Some one had blunder'd:
> Theirs not to make reply,
> Theirs not to reason why,
> Theirs but to do and die,
> Into the valley of Death
> Rode the six hundred.

five-year prison terms, to be served consecutively, but suspended both sentences and placed him on probation with the Second Judicial District Department of Correctional Services (DCS) for five years on each count.

Anderson's first probation requirement was to undergo sex-offender treatment, residing "at the Marshalltown Residential Facility until such time as maximum benefits ha[d] been derived." Anderson could leave for work, but otherwise had to remain at the facility. Anderson was discharged from the Marshalltown facility on March 5, 2005, subject to the remaining conditions of his probation. Any benefits he received from his sex-offender treatment proved short-lived.

The DCS placed Anderson on electric monitoring and home supervision. An electronic monitoring device was attached to his ankle to be worn at all times. Probation officer Ellen Barker was assigned to his case, and he had to check in with her daily. Anderson was required to maintain employment, and he worked six days a week. The DCS allowed him one hour to return home from work in order to run errands. He could obtain permission to leave his house in the evening for entertainment, such as attending movies; and with permission, he could remain out until 1 a.m. and travel outside the county. At home, Anderson had unlimited access to television, internet, and video games.

Another probation requirement prohibited Anderson from contact with children age sixteen or younger. On March 3, 2006, Barker filed a report of violation, stating Anderson had "numerous contacts with sixteen-year-old girls." Specifically, Anderson, then age thirty-seven, told Barker he was getting calls from both the parents of his "girlfriend," S.R., and the Iowa Falls police threatening to press charges if he did not stay away from her. He claimed he thought S.R. was age twenty. Barker obtained the police report indicating S.R. was age sixteen, met Anderson

over the internet on the website Mate1.com, got together with him five or six times, and had spent the night at his house. The report also noted Anderson had provided Bacardi rum to S.R.'s sixteen-year-old friend. On March 10, Barker went to Anderson's home to warn him against contacting minors. Later that evening, Barker received a tip from the police that S.R. was at Anderson's home. Barker went there with two officers and found S.R. hiding naked in a spare bedroom under the bed. A search of Anderson's computer revealed he frequented pornography websites, dating websites, and chat rooms, and he downloaded pictures of clothed children.

On May 24, the district court revoked Anderson's probation and reinstated the prison terms not to exceed ten years. He received sentencing credit for the time he spent in the Marshalltown residential facility, but not for the time he lived at home under electronic monitoring and supervision. Anderson filed an application for postconviction relief seeking such credit. The district court denied Anderson's application, concluding the statutory scheme only provided sentencing credit for time spent in a jail-like facility. The district court reasoned his electronic monitoring and home supervision did not restrict his liberty in a manner similar to jail and that awarding him sentencing credit would "eviscerate the difference between probation and incarceration" and "lead to an absurd result." The court of appeals affirmed with a dissent. We granted Anderson's application for further review.

## II.  Standard of Review.

We review statutory interpretation issues raised in postconviction relief actions for correction of errors at law. *Harrington v. State*, 659 N.W.2d 509, 519–20 (Iowa 2003).

### III. Principles of Statutory Interpretation.

Anderson argues both Iowa Code sections 903A.5(1) and 907.3(3) entitle him to receive credit for time served under electronic monitoring and home supervision. The State argues the legislature only intended to award defendants sentencing credit for time served in a jail-like setting.

When tasked with interpreting a statute we have stated:

> "[O]ur primary goal is to give effect to the intent of the legislature." *State v. Anderson,* 782 N.W.2d 155, 158 (Iowa 2010). "That intent is evidenced by the words used in the statute." *State v. Kidd,* 562 N.W.2d 764, 765 (Iowa 1997). "When a statute is plain and its meaning clear, courts are not permitted to search for meaning beyond its express terms." *State v. Chang,* 587 N.W.2d 459, 461 (Iowa 1998). In the absence of legislative definition, we give words their ordinary meaning. In interpreting criminal statutes, however, we have repeatedly stated that provisions establishing the scope of criminal liability are to be strictly construed with doubts resolved therein in favor of the accused.

*State v. Hearn,* 797 N.W.2d 577, 583 (Iowa 2011) (other citations omitted) (internal quotation marks omitted); *see also State v. Rodenburg,* 562 N.W.2d 186, 189 (Iowa 1997) (construing sentencing credit provision using "the legal maxim that when statutory language is not ambiguous, or when a statute is plain and its meaning is clear, this court need not search for legislative intent or a meaning beyond the expressed language"); 3 Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 58:4, at 120 (7th ed. 2008) (statutes impinging on liberty interests are subject to strict construction).

### IV. Iowa Code Section 903A.5(1).

Anderson argued he is entitled to credit for time served monitored at home based on Iowa Code section 903A.5(1), which awards sentencing credit to any "inmate . . . confined to a county jail or other correctional or mental facility at any time prior to sentencing, or after sentencing but

prior to the case having been decided on appeal."[2]  The district court and court of appeals correctly determined Anderson is not entitled to sentencing credit under section 903A.5(1).

Anderson's electronic monitoring and home supervision does not make him an "inmate . . . confined to a county jail or other correctional or mental facility" within the meaning of section 903A.5(1).  In *Rodenburg,* we noted, "The statutory words here are plain and unambiguous and clearly only allow credit for time served in state correctional institutions or detention facilities."  562 N.W.2d at 189.  We held the defendant was not entitled to sentencing credit for time spent in police custody at a hospital because the hospital was not a "jail or other correctional facility."  *Id.*  Similarly, Anderson's home is not a "jail or other correctional facility."  Section 903A.5(1) does not entitle Anderson to sentencing credit for time spent under home supervision and electronic monitoring.

**V.  Iowa Code Section 907.3(3).**

**A.  The Statutory Scheme.**  Sentencing credits are also allowed under Iowa Code section 907.3(3), which provides:

> By record entry at the time of or after sentencing, the court may suspend the sentence and place the defendant on probation upon such terms and conditions as it may require including commitment to an alternate jail facility or a community correctional residential treatment facility to be followed by a term of probation as specified in section 907.7, *or commitment of the defendant to the judicial district department of correctional services for supervision or services under section 901B.1 at the level of sanctions which the district department determines to be appropriate* and the payment of fees imposed under section 905.14.  *A person so committed who has probation revoked shall be given credit for such time served.*

---

[2]Effective July 1, 2011, the legislature amended section 903A.5(1) to award sentencing credit for time spent presentence in a "municipal holding facility" as well as "county jail" and "other correctional or mental facility."  2011 Iowa Acts H.F. 271, § 3.

(Emphasis added.) The court of appeals concluded this provision did not require Anderson to receive credit for his time spent under home supervision monitored electronically with the ankle bracelet. We disagree.

This court, in 1982, construed an earlier version of this statute to hold a defendant was not entitled to sentencing credit for time spent on probation because no provision specifically authorized such a sentencing credit. *Trecker v. State*, 320 N.W.2d 594, 595 (Iowa 1982) ("Denial of credit is appropriate under circumstances where the restrictions imposed cannot be equated with incarceration."). The court of appeals majority relied on *Trecker* to deny Anderson's request for credit. Section 907.3(3), however, was amended in 1996 specifically to provide defendants sentencing credit for time served while "commit[ed] . . . to the judicial district department of correctional services for supervision or services under section 901B.1 at the level of sanctions which the district department determines to be appropriate." 1996 Iowa Acts ch. 1193, § 19. The 1996 amendment added the statutory authorization *Trecker* found lacking earlier. This is the operative statutory language governing Anderson's application. This appeal presents our first opportunity to construe the statute as amended in 1996.

Sections 907.3(3) and 901B.1 should be read together to determine when sentencing credit is awarded. Iowa Code section 901B.1 provides a "corrections continuum" describing five levels of corrections sanctions. The State argues the legislature intended to limit sentencing credit to only jail-like probation sanctions because, otherwise, a defendant would be entitled to sentencing credit for any probation sanction, even unsupervised sanctions such as fines or community service. The State's argument overlooks distinctions between the continuum's different

sanction levels and section 907.3(3)'s language restricting sentencing credit to sanctions when the DCS provides "supervision or services."

Level one sanctions are "[n]oncommunity-based corrections sanctions," which include self-monitored sanctions and sanctions "which are monitored for compliance by other than the . . . department of correctional services." Iowa Code § 901B.1(1)(*a*). A defendant subjected to a level one sanction is not committed to correctional services "for supervision or services." *Id.* §§ 901B.1(1)(*a*), 907.3(3). Accordingly, a defendant is not entitled to sentencing credit for level one sanctions.

The remaining sanction levels all require the DCS to supervise the defendant. Level two sanctions include "monitored sanctions," "supervised sanctions," and "intensive supervision sanctions," which include electronic monitoring, day reporting, and work release programs. *Id.* § 901B.1(1)(*b*). Level three sanctions are entitled "quasi-incarceration" and include residential facilities and house arrest with electronic monitoring. *Id.* § 901B.1(1)(*c*). Level four and five sanctions require incarceration. *Id.* § 901B.1(1)(*d*)–(*e*). Since these sanctions all involve "supervision or services" under section 901B.1, section 907.3(3) plainly states defendants subjected to these sanctions are entitled to sentencing credit. In summary, when sections 907.3(3) and 901B.1 are read together, a defendant is entitled to sentencing credit "for such time served" while he is committed to the DCS and placed in level two or greater sanctions under section 901B.1.

The district court's judgment and sentence "placed [Anderson] upon probation to the Second Judicial District Department of Correctional Services" and thereby committed Anderson to the DCS. The DCS monitored him electronically and imposed daily reporting requirements. Regardless of whether Anderson's sanctions are classified

as level three "house arrest" or level two "intensive supervised sanctions," Anderson was "committed" to the DCS for "supervision or services." *See State v. Pickett*, 671 N.W.2d 866, 871 (Iowa 2003) (finding DCS's "administrative supervision of the defendant's probation, checking for compliance and notifying the court when compliance was not forthcoming" to mean the defendant was "subject to supervision" within the meaning of section 905.14(1)). The plain language of section 907.3(3), therefore, entitles Anderson to sentencing credit for his time served subject to electronic monitoring and home supervision.

**B. Alleged Ambiguities.** The State nevertheless argues section 907.3(3) is ambiguous, contending "it is unclear whether 'so committed' [in section 907.3(3)] refers to placement in a residential facility, to placement in the corrections continuum or both." The State also argues "such time served" should be limited to time spent in a jail-like facility. These arguments are defeated by the statute's use of the disjunctive "or." Section 907.3(3) refers to "*commitment* to an alternate jail facility or a community residential treatment facility . . . , *or commitment* . . . to the judicial district department of correctional services for supervision or services." (Emphasis added.) The provision's next sentence states, "A person *so committed* . . . shall be given credit for *such time served.*" Iowa Code § 907.3(3) (emphasis added). Section 907.3(3) thereby describes several alternatives to which a defendant may be "committed." The provision's final sentence, stating a person "so committed" is entitled to sentencing credit, plainly applies to each of the alternatives for "commitment." We find no textual ambiguity.[3]

_____

[3]Because we find the operative statutory language to be unambiguous, we need not decide whether the rule of lenity applies to a sentencing credit statute. *See Bifulco v. United States*, 447 U.S. 381, 387, 100 S. Ct. 2247, 2252, 65 L. Ed. 2d 205, 211 (1980) ("In past cases the Court has made it clear that this principle of statutory

The State further argues "the ambiguity of the provision is heightened given its legislative history." Before 1996, section 907.3(3) referred only to commitment to an alternate jail facility or a community correctional residential treatment facility and stated a person "so committed" is entitled to credit "for such time served." Iowa Code § 907.3(3) (1995). The 1996 amendment added the phrase "or commitment of the defendant to the judicial district department of correctional services for supervision or services," without amending the next sentence providing credit for "such time served" by persons "so committed." 1996 Iowa Acts ch. 1193, § 19. The State suggests the legislature added the DCS "supervision or services" language without intending to require sentencing credit for persons living outside jail-like facilities—that is, the failure to narrow the next sentence was an oversight. Speculation that the legislature did not mean what it said is unpersuasive. *See* Iowa R. App. P. 6.904(3)(*m*) ("In construing statutes, the court searches for the legislative intent as shown by what the legislature said, rather than what it should or might have said."). The legislature's chosen language awards sentencing credit to defendants committed to the DCS for "supervision or services," including those living at home under electronic monitoring. It is worth repeating in full Justice Thompson's timeless admonition regarding our court's role in statutory interpretation:

> Why the change was made, why the legislature deemed it proper . . . , we do not know, nor is it important that we should understand. Ours not to reason why, ours but to read, and apply. It is our duty to accept the law as the

_____

construction [the rule of lenity] applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose."); *Hearn*, 797 N.W.2d at 585 ("The rule of lenity requires that ambiguous statutes imposing criminal liability be strictly construed in favor of the defendant.").

legislative body enacts it. We do not decide what the legislature might have said, or what it should have said in the light of the public interest to be served, but only what it did say; and this we must gather from the language actually used. When a statute is plain and its meaning clear, there is no room for interpretation; or, to put it in another way, there is only one possible construction. . . .

If we do not follow the clear language of a statute, or of the Constitution, but by a fallacious theory of construction attempt to impose our own ideas of what is best, even if in so doing we conceive that we are promoting the public welfare and achieving a desirable result, we are indulging in judicial legislation and are invading the province of the Legislative branch of the Government, or of the electorate in amending the basic law. The end does not in such cases justify the means. We must accept [the statute] as the legislature wrote it, and its meaning is definite and beyond fair debate.

*Holland*, 253 Iowa at 1011, 115 N.W.2d at 164.

Finally, the State argues the "statutory scheme" indicates the legislature only intended a defendant to receive sentencing credit when committed to a jail-like facility. The State notes sentencing credits are not allowed following revocation of a deferred sentence. *See* Iowa Code § 907.3(2). According to the State, the legislature would not have intended different sentencing credit results for deferred sentences and suspended sentences. We disagree, based on the differences between the sentencing options. The State is comparing apples and oranges. A " *'[d]eferred sentence'* means a sentencing option whereby the court enters an adjudication of guilt but does not impose a sentence." *Id.* § 907.1(2). The court retains discretion to impose any sentence it originally could have imposed if the defendant fails to comply "with conditions set by the court as a requirement of the deferred sentence." *Id.* By contrast, a " *'[s]uspended sentence'* . . . imposes a sentence and then suspends execution," leaving the court no discretion but to impose the original sentence in the event of revocation. *Id.* § 907.1(3). The legislature could choose to treat these sentencing options differently

when allowing credits. We are duty bound to apply the statutes as written.

**C. The Absurd Results Doctrine.** The State argues it would be absurd to award Anderson sentencing credit for his time "served" living at home with the electronic ankle bracelet and observes, "In essence, Anderson requests credit for time he spent committing further sex offenses and sexually victimizing more young girls." The State argues we must construe the statute to avoid this absurd result.

We recently discussed the absurd results doctrine in statutory construction in *Sherwin-Williams Co. v. Iowa Department of Revenue*, 789 N.W.2d 417 (Iowa 2010). We explained the doctrine as follows:

> "[E]ven in the absence of statutory ambiguity, departure from literal construction is justified when such construction would produce an absurd and unjust result and the literal construction in the particular action is clearly inconsistent with the purposes and policies of the act."

789 N.W.2d at 427 (quoting *Pac. Ins. Co. v. Or. Auto. Ins. Co.*, 490 P.2d 899, 901 (Haw. 1971)). In view of our obligation to ascertain the intent of the legislature,

> we are mindful of the cautionary advice of one commentator that "the absurd results doctrine should be used sparingly because it entails the risk that the judiciary will displace legislative policy on the basis of speculation that the legislature could not have meant what it unmistakably said."

*Id.* (quoting *Sutherland Statutory Construction* § 45:12, at 105–07).

In *Sherwin-Williams,* we declined to apply the absurd results doctrine, even though the outcome under the plain language of the statute—allowing a retailer to claim a manufacturer's tax credit— appeared counterintuitive. *Id.* at 427–28. We emphasized "we will not ignore clear legislative language merely because it leads to a result that seems contrary to the court's expectations." *Id.* at 427. Similarly, it may

be counterintuitive to allow credit against prison time for the period Anderson spent living at home wearing an electronic ankle bracelet, but this result is not so absurd as to permit us to disregard the plain language of the statute requiring that credit. *See Holland*, 253 Iowa at 1011, 115 N.W.2d at 164; Iowa R. App. P. 6.904(3)(*m*).

State courts in construing their respective state statutes have reached different conclusions as to whether sentencing credit is awarded for electronic monitoring and home supervision. Several states allow sentencing credit for electronic monitoring at home. *See, e.g.*, *State v. Guillen*, 32 P.3d 812, 813 (N.M. Ct. App. 2001) (holding as a matter of law pretrial electronic monitoring and home confinement merits sentencing credit under its statute);[4] *Harris v. Charles*, ___ P.3d ___, ___ (Wash. 2011) (noting defendants convicted of a felony receive sentencing credit for time subjected to electronic and home monitoring pretrial).[5] Most courts have held electronic monitoring and home supervision does not satisfy the "custodial" or related requirements of their state sentencing credit statutes. *See, e.g.*, *Matthew v. State*, 152 P.3d 469, 473 (Alaska Ct. App. 2007) (holding confinement to home and work through electronic supervision does not equate to "custody"); *Bush v. Arkansas*, 2 S.W.3d 761, 766 (Ark. 1999) (finding electronic monitoring does not place a defendant "in custody" within meaning of sentencing credit statute); *State v. Climer*, 896 P.2d 346, 350 (Idaho Ct. App. 1995) (concluding "house arrest" through electronic monitoring is not

---

[4]*See* N.M. Stat. Ann. § 31–20–12 (West, Westlaw through 1st Reg. legislative sess. 2011) ("A person held in official confinement . . . shall . . . be given credit for the period spent in presentence confinement . . . .").

[5]*See* Wash. Rev. Code Ann. §§ 9.94A.505(6), 9.94A.030(8), (28), (34) (West, Westlaw through 2011 legislation eff. through May 31, 2011) (stating sentencing credit is awarded against a felony sentence for presentence "confinement," which includes "partial confinement," "work release," and "home detention").

"incarceration"); *State v. Muratella*, 483 N.W.2d 128, 129–30 (Neb. 1992) ("Being confined to one's home, subject to electronic monitoring, with the freedom to engage in employment and probation-related activities, is far less onerous than being imprisoned."); *State v. Faulkner*, 657 N.E.2d 602, 604 (Ohio Ct. App. 1995) (finding pretrial electronic home monitoring does not entitle defendant to sentencing credit); *Commonwealth v. Kyle*, 874 A.2d 12, 20 (Pa. 2005) (holding time spent on electronic monitoring while on bail release does not constitute "custody" within meaning of sentencing credit statute); *Tagorda v. State*, 977 S.W.2d 632, 633–34 (Tex. Ct. App. 1998) (concluding defendant not entitled to credit for electronic monitoring as condition of bond before sentencing).[6]

Neither party cited a case from a state with a statutory provision similar to Iowa Code section 907.3(3), nor did we find a similar provision. The cases from other jurisdictions provide little guidance here because the operative statutory language differs from section 907.3(3). Notably,

---

[6]The state courts that award sentencing credit only when the defendant is subjected to "custody" or "jail-like" sanctions applied statutes that expressly require such a standard. *See, e.g.*, Alaska Stat. Ann. § 12.55.025(c) (West, Westlaw through 2010 Second Reg. Sess.) (awarding "credit for time spent in custody"); Ark. Code Ann. § 5–4–404 (West, Westlaw through 2011 Reg. Sess.) (requiring probation "custody" or "imprisonment or confinement" to receive credit against the sentence); Idaho Code Ann. § 18–309 (West, Westlaw through 2011 ch. 1–335, eff. on or before July 1, 2011) (awarding credit "for any period of incarceration"); Neb. Rev. Stat. Ann. § 83–1, 106 (West, Westlaw through Second Reg. Sess. 2010) (providing sentencing credit "to an offender for time spent in custody"); Ohio Rev. Code Ann. §§ 2921.01(e), 2967.191 (West, Westlaw through 2011 Files 1–19 filed by May 27, 2011) (awarding sentencing credit for "confinement in any public or private facility"); 42 Pa. Cons. Stat. Ann. § 9760(1) (West, Westlaw through 2011 Acts 1–9 and 11–21) ("Credit . . . shall be given to the defendant for all time spent in custody."); Tex. Code Crim. Proc. Ann. art. 42.03, § 2(a) (West, Westlaw through chapters eff. immediately through ch. 41 of 2011 Reg. Sess.) (awarding credit for presentencing "time that the defendant has spent in jail"). The American Bar Association's "black letter" standards also recommend awarding sentencing credit for "time spent in custody" prior to trial, sentencing, appeal, or during probation. ABA Standards for Criminal Justice: Sentencing, Standard 18–3.21(f) (3d ed. 1994).

Iowa's provision does not limit sentencing credit to custodial settings, but also allows credit for "commit[ment]" to the DCS "for supervision or services under section 901B.1 at the level of sanctions which the district department determines to be appropriate." Iowa Code § 907.3(3). The case law in other jurisdictions is the product of different statutory schemes. Whether defendants should only receive sentencing credit for time spent living in "jail-like" facilities is a policy question for the legislature. As shown by the different schemes employed by other state legislatures, reasonable minds might differ as to this policy determination. That Iowa falls within a small minority allowing these sentencing credits does not render the result here absurd.

Anderson was required to wear the electronic monitoring device and get permission to leave his home for reasons unrelated to work. He remained under the daily supervision of his probation officer. It is not absurd for the Iowa legislature to provide sentencing credit for his time spent living at home under such restrictions. To apply the absurd results doctrine in this case would risk substituting our judgment for that of the legislature. We apply the statute as written.

## VI. Disposition.

The plain language of Iowa Code section 907.3(3) entitles Anderson to sentencing credit for the period of time he was committed to the DCS for electronic monitoring and home supervision. Accordingly, the decision of the court of appeals is vacated, and the district court order denying credit is reversed. We remand for entry of an order allowing Anderson sentencing credit for the period of his electronic monitoring and home supervision and calculating the number of days to be credited.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

All justices concur except Mansfield, J., who takes no part.