# IN THE COURT OF APPEALS OF IOWA

No. 13-1413
Filed June 10, 2015

**CHRISTOPHER HAMILTON,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Douglas F. Staskal, Judge.

Christopher Hamilton appeals the denial of his application for postconviction relief contending the postconviction-relief court erred in concluding he was not entitled to credit for the time he served in a treatment facility as part of his participation in Drug Court.  **AFFIRMED.**

Jeffrey M. Lipman of Lipman Law Firm, P.C., Clive, for appellant.

Thomas J. Miller, Attorney General, William A. Hill, Assistant Attorney General, John P. Sarcone, County Attorney, and Jaki Livingston, Assistant County Attorney, for appellee State.

Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DOYLE, J.**

Inmate Christopher Hamilton appeals the postconviction-relief court's partial denial of his application for postconviction relief. He contends the court erred in concluding he was not entitled to credit for the time he served in a treatment facility as part of his participation in Drug Court. We affirm.

### I. Background Facts and Proceedings.

The facts are undisputed. In 2010, Christopher Hamilton was charged with two counts of forgery, in violation of Iowa Code section 715A.2(1)(c) and .2(2)(a)(3) (2009), as a habitual offender pursuant to section 902.8 and .9(3). In September 2010, Hamilton pled guilty to the enhanced charges of forgery with the habitual offender provisions attached thereto. Part of the agreement provided Hamilton would "be required to successfully complete Drug Court," and if he did so, the State would "have a joint recommendation for a suspended sentence." If Hamilton did not successfully complete "Drug Court, he agree[d] to go to prison for [thirty] years."

Additionally, Hamilton signed an "Intensive Supervision Court Plea Agreement" which provided, in part:

> Defendant agrees to be released to the custody of the [Iowa] Department of Correctional Services and to sign a Release Agreement . . . . Defendant agrees and understands that violations of Drug Court rules may [r]esult in immediate arrest. Serious violations that do not result in Defendant being removed from the program may result in short term jail stays as a penalty for breaking the rules. Defendant agrees and understands that if [he] chooses to post bond after being placed in jail on contempt for Program violations, that action will be considered a request that Defendant be removed from Drug Court and probation revocation proceedings commenced or a return of the [case] to the general trial docket for prosecution.
> . . . .

> Defendant agrees to cooperate with and complete a substance abuse evaluation. Upon completion of the evaluation; Defendant agrees to cooperate with and successfully complete any recommended treatment, including any and all aftercare requirements and [halfway] house residency.
> . . . .
> Defendant agrees if and upon revocation from Drug Court, Defendant will be sentenced to prison upon conviction and/or probation revocation. . . . Defendant's revocation from Drug Court will result in the State and [Iowa] Department of Corrections initiating probation revocation proceedings or returning this matter to the trial docket for prosecution.

He also signed an "Intensive Supervision Court Contract" and an "Intensive Supervision Court Release Agreement and Order." All three documents outlined possible sanctions for violations of the drug court program, including jail time.

Before accepting the plea, the district court conducted a detailed colloquy with Hamilton. Hamilton stated he understood the plea agreement, and after the colloquy, the court found Hamilton understood his rights, among other things, and it accepted his voluntary guilty plea. After accepting his plea, the court explained to Hamilton:

> A sentencing date will be set in the future pending your work in Drug Court . . . . The bond at this point . . . is going to be released on your own recognizance. However, the terms of that bond are compliance with all requirements of Drug Court. That, of course, includes all the requirements of [the Iowa Residential Treatment Center (IRTC)] where you're going to be going and all the requirements of any program or halfway house that you will be placed in assuming you successfully complete the Drug Court.

Hamilton acknowledged he understood.

Hamilton was first ordered to participate in treatment at the IRTC in Mount Pleasant. As part of the court's order, Hamilton was advised that he was to

> comply with all terms and conditions of said facility; a violation of same will be a violation of Intensive Supervision Court rules. If the defendant leaves the treatment center at any time without an escort

by the Polk County Sheriff's office, the act of leaving shall be deemed an escape and defendant may be prosecuted on a separate criminal violation for such escape.

Hamilton completed substance abuse services at IRTC a few months later.

On November 22, 2010, Hamilton was ordered to be transported to the Bridges of Iowa facility in Des Moines. That order stated:

Defendant shall comply with all terms and conditions of said facility; a violation of same will be a violation of Intensive Supervision Court rules. Defendant shall remain in said facility until successful discharge at which time [his] counselor will have communicated with [his] probation officer and continuing care arrangements will have been made. Defendant shall then comply with terms and conditions of continuing care.

This order did not specifically provide that Hamilton could be prosecuted for escape if he left the facility without permission.

Hamilton remained at the Bridges facility for 187 days, until May 27, 2011, when he left the Bridges facility without completing treatment. Thereafter, the court entered a violation order finding Hamilton was "in violation of Intensive Supervision (Drug Court) rules." In June 2011, Hamilton was revoked from Drug Court for his violation of the Drug Court rules, and he was to be taken into custody and remain therein, with a "pre-trial conference/ sentencing/ probation violation hearing" to be held thereafter.

Following the hearing, the court sentenced Hamilton, pursuant to the plea agreement, to a total period of incarceration not to exceed thirty years. The court's sentencing order explicitly stated Hamilton was to "receive credit for time served"; however, Hamilton was not to "receive credit for time [served] while under the supervision of the [Drug Court]; no credit between September 17, 2010, and June 17, 2011." Hamilton did not appeal the sentencing order.

In July 2011, the Iowa Supreme Court decided *Anderson v. State*, 801 N.W.2d 1, 4-9 (Iowa 2011), finding "[t]he plain language of Iowa Code section 907.3(3) [(2007)] entitles Anderson to sentencing credit for the period of time he was committed to [probation with the Second Judicial District Department of Correctional Services] for electronic monitoring and home supervision." *See also State v. Allensworth*, 823 N.W.2d 411, 412 (Iowa 2012) (discussing that in *Anderson* it "recognize[ed] a probation credit under Iowa Code section 907.3(3) (2007)."). At that time, section 907.3(3) provided:

> By record entry at the time of or after sentencing, the court may suspend the sentence and place the defendant on probation upon such terms and conditions as it may require including commitment to an alternate jail facility or a community correctional residential treatment facility to be followed by a term of probation as specified in section 907.7, or commitment of the defendant to the judicial district department of correctional services for supervision or services under section 901B.1 at the level of sanctions which the district department determines to be appropriate and the payment of fees imposed under section 905.14. A person so committed who has probation revoked shall be given credit for such time served.

*Anderson*, 801 N.W.2d at 4 (emphasis omitted). Because "Anderson was required to wear the electronic monitoring device and get permission to leave his home for reasons unrelated to work," and Anderson "remained under the daily supervision of his probation officer," the court found the Iowa legislature meant "to provide sentencing credit for [Anderson's] time spent living at home under such restrictions," and it applied "the statute as written." *Id.* at 9. However, the court rejected Anderson's argument that he was also entitled credit for that time under section 903A.5(1), because the language of that section at that time applied only to "inmates . . . confined to a county jail or other correctional or

mental facility at any time prior to sentencing, or after sentencing but prior to the case having been decided on appeal." *Id.* at 4.

Following the *Anderson* decision, Hamilton filed pro se motions for credit for time served for the time he was under supervision of the Drug Court from September 24, 2010, to June 17, 2011, citing *Anderson* and Iowa Code section 907.3(3). The State resisted, and the district court ultimately denied Hamilton's motions in June 2012. The court found *Anderson* inapplicable to Hamilton's circumstance because Hamilton had not been sentenced nor was he on probation at the time he participated in Drug Court, as required in the language of section 907.3(3). Additionally, the district court questioned if *Anderson* would even apply had Hamilton been sentenced or was on probation, given that Hamilton did not appeal his sentencing order expressly stating he was not entitled to credit for that time.

Thereafter, Hamilton filed a pro se application for postconviction relief (PCR), seeking credits for the time he served in Drug Court. Specifically, Hamilton asserted that the district court had "disregarded [Iowa] Code section 903A.5 because from the time of signing of Drug Court papers [until] the day [he] was violated out of the program [he] was in county jail or other correctional facility." The State resisted, reasserting the reasons found by the district court in Hamilton's motions for credit for time served—that section 907.3(3) was not applicable because Hamilton was not on probation nor sentenced while participating in Drug Court. The State did not address whether section 903A.5 was applicable. The parties later entered into a stipulated agreement of the timeline of Hamilton's incarcerations and applicable law, as well as an agreement

that Hamilton was entitled to credit for the time he served in jail while awaiting placement in the IRTC and the Bridges of Iowa program, as well as credit for the time he served in the IRTC. The only issue left for the PCR court to determine was whether Hamilton was entitled to credit for the 187 days he participated in the Bridges of Iowa program.

After reviewing the parties' written submissions, the PCR court granted-in-part and denied-in-part Hamilton's PCR application. The court agreed that Hamilton was entitled to credit for the time he served in jail pending placement in the treatment facilities and the time spent in IRTC, as stipulated by the parties. However, relying on *Anderson*, the PCR court agreed with the district court that Hamilton was not entitled to credit for time he served in the Bridges of Iowa residential treatment program because Hamilton was not on probation at the time he participated in that drug court program. Additionally, without referencing section 903A.5, the PCR court concluded "the Bridges of Iowa was not a county jail or alternative holding facility."

Hamilton now appeals, asserting the PCR court erred in finding he was not entitled to credit for the time he served at the Bridges treatment facility. Our review is for correction of errors at law. *Anderson*, 801 N.W.2d at 3.

## II. Discussion.

After Hamilton filed his notice of appeal, the Iowa Supreme Court decided *State v. Calvin*, wherein it considered "whether a criminal defendant is entitled to credit against a prison sentence for time spent prior to sentencing at the [IRTC] and for time spent in jail as a result of [D]rug [C]ourt program violations." 839 N.W.2d 181, 182 (Iowa 2013). Like Hamilton, Calvin entered into a plea

agreement wherein he would participate in Drug Court and receive a recommendation of a suspended sentence upon successful completion of the Drug Court program, but if he failed to successfully complete the program, he would serve a prison sentence. *See id.* Like Hamilton, Calvin was first ordered to participate in the IRTC and successfully completed that treatment program. *See id.* at 183. Calvin was thereafter placed in a halfway house, wherein the district court ordered Calvin to stay "until successful discharge." *See id.* Calvin later left the facility without permission, and his participation in the Drug Court program was revoked. *See id.* Like Hamilton, Calvin was thereafter sentenced based upon his plea agreement. *See id.*

After the *Anderson* decision, Calvin challenged the calculation of his time-served credits, including the time he spent in jail for Drug Court violations, as well as the time he spent in the IRTC. *Id.* at 183-84, 187-88. Ultimately, the court concluded Calvin was entitled to credit for his time spent in both instances. *Id.* Concerning his time spent in the IRTC, the court explained:

> The record reflects that Calvin was sent to the IRTC for residential treatment as part of his participation in the Polk County Drug Court program. Under Iowa Code section 903A.5(1) [(2011)], time served in a mental health institution may qualify for credit . . . . [T]he fact that a defendant was out on bail prior to the evaluation does not disqualify the defendant from receiving credit for the time of examination and evaluation under Iowa Code section 903A.5(1). [*State v. Capper*, 539 N.W.2d 361, 366-67 (Iowa 1995), *overruled on other grounds by State v. Hawk*, 616 N.W.2d 527, 530 (Iowa 2000)].
> We conclude Calvin is entitled to credit for the time he was in residential treatment at the IRTC. *No one questions that the IRTC qualifies as a mental facility under section 903A.5(1).* There is also no question that Calvin was confined at the IRTC. The order for treatment and transport to the facility emphasized that if Calvin left the facility without a proper escort, the act would be deemed an escape for which Calvin could be separately prosecuted. Under

> our interpretation of Iowa Code section 903A.5(1), bail status is irrelevant to this issue.
>
> Further, Calvin's confinement at the IRTC was related to his underlying sentence. Successful completion of the residential treatment was a required part of his participation in the Drug Court program. Thus, unlike the situation in [*State v. Mott*, 731 N.W.2d 392, 394 (Iowa 2007)], the time Calvin spent at the IRTC was related to the ultimate sentence in the underlying criminal proceeding. As a result, Calvin is entitled to credit for the time he spent confined in the mental facility pursuant to Iowa Code section 903A.5(1).

*Id.* at 187 (emphasis added). We note that Calvin never sought credit for the time he spent in jail for contempt, nor did he seek credit for the time he spent in the halfway house, though it is unclear how long he spent in the halfway house.[1] *See id.* at 183, 186 n.2. Additionally, no one challenged whether the IRTC qualifies as a mental facility under section 903A.5(1). *Id.* at 187.

On appeal, Hamilton argues the supreme court's analysis in *Calvin* applies to the time he spent in the Bridges program. The State resists Hamilton's argument, and it asserts he was only entitled to the time he spent in the IRTC, which he received. The State maintains, like in *Anderson*, a probation credit did not apply because he was not on probation at the time he was in the Bridges program; rather, he was in a pretrial Drug Court program. Additionally, it argues the Bridges program "does not qualify as a mental health facility pursuant to [Iowa Code section 903A.5(1) (2013)]," contending that "program is not [the] functional equivalent of a county jail, municipal holding facility, or other correctional or mental facility." The State also points out that the relevant order in *Calvin* expressly provided Calvin could be prosecuted for escape, and it states

---

[1] He only sought credit for "the remaining time spent in jail while under the supervision of the drug court that was not pursuant to a contempt order" and "for the time he was at the IRTC for inpatient treatment." *Id.* at 185.

"there was no claim [here] that the offender could be charged with escape" if Hamilton left the Bridges program. In reply to the State's resistance, Hamilton argues the Bridges program's facility "should be deemed a 'correctional facility' for statutory purposes."

### A. Section 907.3(3).

At this point, Hamilton seems to concede that *Anderson* and Iowa Code section 907.3 are not applicable to the analysis of whether he is entitled to credit for the time he served at the Bridges program, though it is unclear Hamilton ever made that argument in his PCR application. Regardless, we agree they do not apply here, given that Hamilton was not sentenced or on probation during the time he spent in the Bridges program. Consequently, insofar as the PCR court found *Anderson* and section 907.3 inapplicable to Hamilton's time-served-credit calculation, we affirm its denial of Hamilton's PCR application as to that issue.

### B. Section 903A.5.

However, Hamilton's appeal, like his PCR application, relies upon Iowa Code section 903A.5 as the basis for credit for the time he spent in the Bridges program. That section provides that "[i]f an inmate was confined to a *county jail, municipal holding facility, or other correctional or mental facility* at any time prior to sentencing, . . . the inmate shall be given credit for the days already served upon the term of the sentence." Iowa Code § 903A.5(1) (emphasis added). Consequently, the fighting issue is whether or not the Bridges program and its facility are considered one of the types of facilities listed in section 903A.5(1).

Hamilton points out that in *Calvin*, the court found Calvin was entitled to credit for the time he spent in the IRTC pursuant to section 903A.5(1). 839 N.W.2d at 187. In so concluding, the court stated:

> Calvin's confinement at the IRTC was related to his underlying sentence. Successful completion of the residential treatment was a required part of his participation in the drug court program. . . . [T]he time Calvin spent at the IRTC was related to the ultimate sentence in the underlying criminal proceeding.

*Id.* Like Calvin, Hamilton's confinement at the Bridges facility was related to his underlying sentence. Successful completion of the residential treatment was required as part of Hamilton's participation in the drug court program. The time Hamilton spent at the Bridges of Iowa was related to his ultimate sentence in the underlying criminal proceeding. If that was all that was required, Hamilton would be entitled to the credit. But there is more.

In order to trigger the credit, the facility of confinement must also fall within the category of facilities listed in section 903A.5(1). In that regard, *Calvin* is of no help to Hamilton, as there, the parties did not question that the facility qualified under section 903A.5(1). *See id.* But here, the issue is contested, and Hamilton has not established that Bridges of Iowa qualifies as a facility listed in section 903A.5(1). The bald statements made by the parties that the Bridges facility either does or does not fall into the definition of one of the facilities listed in section 903A.5(1) is insufficient for us to make such a determination. Hindering our analysis is the complete and utter lack of any information or facts concerning the Bridges of Iowa program.[2] Therefore, Hamilton has not established that

---

[2] Unlike this case, a record was developed sufficiently in *State v. Moore*, No. 10-1162, 2011 WL 649679, at *1 (Iowa Ct. App. Feb. 23, 2011), allowing this court to

Bridges of Iowa qualifies as a facility listed in section 903A.5(1). Thus, we cannot conclude Hamilton is entitled to credit for the time he spent at the Bridges facility pursuant to Iowa Code section 903A.5(1). Consequently, we must affirm the PCR court's ruling on this issue.[3]

We affirm the PCR court's ruling denying Hamilton's PCR application.

**AFFIRMED.**

---

conclude "Harbor of Hope and Farrell House are independently-run, privately funded, residential group homes and are not correctional or mental health facilities affiliated with the Iowa department of corrections or the Iowa department of public health."

[3] As in *Moore*, we "acknowledge the strong argument that credit should be afforded for participation in inpatient programs prior to sentencing where the failure to comply with the program requirements may give rise to contempt adjudication. Under such circumstances, it is difficult to describe a defendant's participation in such a program as voluntary." 2011 WL 649679, at *1 (footnote omitted).