# IN THE COURT OF APPEALS OF IOWA

No. 16-2178
Filed January 10, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**BRETT CALVIN HENSLEY,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, William P. Kelly, Judge.

A defendant appeals the court's denial of his motion to obtain jail credit for the time he spent in the Bridges of Iowa program. **AFFIRMED.**

Jamie Hunter of Dickey & Campbell Law Firm, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and William A. Hill, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., Mullins, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**SCOTT, Senior Judge.**

Brett Hensley appeals the district court's denial of his motion for credit for days he spent at the Bridges of Iowa program against his sentence of incarceration. The State asserts the district court correctly denied the credit. For the reasons stated herein, we affirm the district court's decision.

**I. Background Fact and Proceedings.**

Hensley pled guilty to third-degree burglary and was sentenced on March 25, 2014, to a suspended five-year prison term. Hensley was placed on probation for two years, and the court ordered, as a part of that probation, Hensley complete treatment at the Bridges of Iowa program. The sentencing order required Hensley to remain in the Polk County Jail until space became available at Bridges. On June 17, 2014, Hensley was escorted to the Bridges facility, which is housed in a different portion of the Polk County Jail building. After spending 126 days at Bridges, Hensley absconded from the facility on October 22, 2014. His probation officer filed a report of violation with the court, and the court imposed the previously suspended five-year prison term on August 24, 2015.[1]

On February 29, 2016, Hensley sent a letter to the court asking that he be given credit for the 126 days he spent in the Bridges program. The court directed the attorneys involved in the case to file a written response to the letter. On April 27, 2016, counsel for Hensley filed a motion for credit for time served, asserting he should be permitted credit for time spent at Bridges under Iowa Code section

---

[1] After Hensley absconded from Bridges, he was arrested and charged with second-degree theft. He pled guilty to that charge, and the five-year sentence imposed for that conviction was ordered to run consecutively to the sentence imposed for the burglary conviction, for a total term of confinement of ten years.

903A.5(1) (2016). The State resisted the motion, and Hensley's counsel filed an amended motion on December 13, 2016, asserting credit for the time spent in Bridges should also be granted under section 907.3(3). A hearing was held on December 14, 2016, and the district court issued its decision the same day denying the motion for the credit. Hensley appeals that denial, asserting he is entitled to a credit under section 903A.5(1) and section 907.3(3).

## II. Scope and Standard of Review.

Whether Hensley is entitled to a credit on his sentence for the time he spent at the Bridges program is a question that turns on statutory interpretation. As such, our review of the district court's decision is for the correction of errors at law. *State v. Allensworth*, 823 N.W.2d 411, 413 (Iowa 2012).

## III. Analysis.

At the hearing on his motion, Hensley submitted as an exhibit the application form for the Bridges program. The exhibit provides Bridges is "a long-term faith-based treatment program for substance abusing individuals involved with the criminal justice system. Bridges of Iowa provides an intensive faith-based community environment designed to support individuals as they transition from prison or jail confinement." The application describes the program as lasting, typically, one year and having three phases. The first phase lasts approximately two to three months, and "[t]he resident's time away from the facility is considerably limited during Phase I." Phase 2 lasts approximately three to four months, and residents obtain employment and earn weekend furloughs. According to the application form, Phases 1 and 2 are located in the west wing of the Polk County Jail, "[b]ut the Bridge program is completely separate from the jail itself. Residents

are not locked in. Bridges is a halfway house program. Clients come and go from this facility to work, meetings, church, furloughs, and other activities." Finally, Phase 3 typically lasts six months, and the participant "gains much more freedom, transitions off the West Wing unit and moves into one of our Phase 3 Apartments located in a beautiful facility in West Des Moines." However, the participants are required to return to the residential facility two evenings per week for group counseling sessions and spiritual programing. Failure to satisfactorily progress in the program or the display of unacceptable behavior can result in an "unsuccessful discharge" and the participant's probation or parole officer or referral source is notified.

Hensley also offered testimony at the hearing, having been through Phase 1 of the program. He testified he was escorted to Bridges from his cell in the Polk County Jail, was not allowed the leave the building, and was not allowed to leave the Bridges facility for one week after he arrived. After that week, he was allowed to leave the facility to attend addiction support meetings, but he had to sign in and out of the facility and had a 10:00 p.m. curfew. He believed that if he did not return, a warrant would issue for his arrest. He was assigned a counselor in the program and was required to participate in treatment. However, he knew the staff at Bridges was not employed by the jail but were employed by Bridges, a private nonprofit company. When he failed to return to the program, he was not charged with escape but did suffer the revocation of his probation.

Because the program is housed in the Polk County Jail and because of the level of supervision involved in the program, Hensley asserts he should get credit

toward his sentence for the time he spent at Bridges pursuant to either section 903A.5(1) or section 907.3(3).

**A. Section 903A.5(1).** Iowa Code section 903A.5(1) provides, in part:

> If an inmate was confined to a county jail, municipal holding facility, or other correctional or mental facility at any time prior to sentencing, or after sentencing but prior to the case having been decided on appeal, because of failure to furnish bail or because of being charged with a nonbailable offense, the inmate shall be given credit for the days already served upon the term of the sentence.

It is Hensley's contention that the Bridges program is a "mental facility." The State maintains that Bridges does not qualify as a mental facility, such as the Iowa Residential Treatment Center, because it is not a state-operated facility. *See State v. Calvin*, 839 N.W.2d 181, 187 (Iowa 2013) (noting the parties did not dispute that the Iowa Residential Treatment Center qualified as a mental facility). Instead, the State maintains the program is similar to the Harbor of Hope and Farrell House, independently run, privately funded residential group homes, which this court determined were not correctional or mental health facilities under section 903A.5(1) in *State v. Moore*, No. 10-1162, 2011 WL 649679, at *1 (Iowa Ct. App. Feb. 23, 2011). Instead, the State asserts Hensley voluntarily opted to be placed at Bridges for drug treatment, and he could not be prosecuted for escape if he left. Finally, the State maintains that the location of the treatment center, within a wing of the Polk County Jail, should have no impact on whether the facility is considered to be a correctional or mental facility.

Upon our review of section 903A.5(1), we agree Hensley is not entitled to a credit for the time he spent at Bridges but not based on the characteristics of the program. Instead, section 903A.5(1) is inapplicable to Hensley because his

placement in Bridges occurred after sentencing. Section 903A.5(1) provides for a credit for confinement that occurs "at any time *prior to sentencing*, or after sentencing but prior to the case having been decided on appeal." (Emphasis added.) Hensley's stay at Bridges occurred almost three months after his sentencing hearing, after the court had imposed a judgment of conviction and ordered him to serve a suspended five-year prison term. Every case cited by both parties interpreting section 903A.5(1) is distinguishable on this fact alone. *See, e.g., Calvin*, 839 N.W.2d at 182 ("In this case, we consider whether a criminal defendant is entitled to credit against a prison sentence for time spent *prior to sentencing* at the Iowa Residential Treatment Center (IRTC) and for time spent in jail as a result of drug court program violations." (emphasis added)); *State v. Rodenburg*, 562 N.W.2d 186, 187 (Iowa 1997) (noting the defendant was seeking credit "for time served, particularly for time she spent in custody after her arrest and prior to being taken to jail"); *Hamilton v. State*, No. 13-1413, 2015 WL 3613256, at *1-2 (Iowa Ct. App. June 10, 2015) (noting the court accepted Hamilton's guilty plea and informed him a sentencing day would be set in the future pending his work in drug court); *Moore*, 2011 WL 649679, at *1 & n.1 (stating Moore was admitted to the Polk County Drug Court program and was seeking credit for the time he spent at Harbor of Hope and Farrell house prior to being sentenced).

Because we conclude section 903A.5(1) is inapplicable to Hensley's stay at Bridges, which occurred after sentencing, we agree with the district court's conclusion this section does not entitled him to a credit for days he spent there.

**B.  Section 907.3(3).**  Hensley also asserts section 907.3(3) entitles him to a credit for the time he served at Bridges.  This code provision provides, in part:

> By record entry at the time of or after sentencing, the court may suspend the sentence and place the defendant on probation upon such terms and conditions as it may require including commitment to an alternate jail facility or a community correctional residential treatment facility to be followed by a period of probation as specified in section 907.7, or commitment of the defendant to the judicial district department of correctional services for supervision or services under section 901B.1 at the level of sanctions which the district department determines to be appropriate and the payment of fees imposed under section 905.14.  A person so committed who has probation revoked shall not be given credit for such time served.  However, *a person committed to an alternate jail facility or a community correctional residential treatment facility who has probation revoked shall be given credit for time served in the facility.*

Iowa Code § 907.3(3) (emphasis added).

The language highlighted above giving a person credit for time spent in an alternate jail facility or a community correctional residential treatment facility was added in 2012 in response to the supreme court's decision in *State v. Anderson*, 801 N.W.2d 1, 9 (Iowa 2011), which held a defendant was entitled to credit for time spent on probation wearing an electronic monitoring device.  *See* 2012 Iowa Acts ch. 1138, § 91.  Our supreme court recognized in *State v. Allensworth*, 823 N.W.2d 411, 413 (Iowa 2012), that the amended language was added in section 907.3(3) to eliminate the credit recognized in *Anderson* for time served on probation and to maintain the credit for time served in "alternate jail or correctional facilities."  While the amendment clarified a credit would not apply for electronically monitored probation, the credit for time served in alternate jail facilities and community correctional residential treatment facilities had been permitted before *Anderson* and the amended language.  *See Trecker v. State*, 320 N.W.2d 594, 596 (Iowa

1982), *superseded on other grounds by statute as stated in Allensworth*, 823 N.W.2d at 416.

In *Trecker*, the court determined that "alternate jail facility" was "specifically defined, and its implementation procedure prescribed, by chapter 356A." *Id.* The *Trecker* court noted for a facility to be qualified under chapter 356A, it "require[d] action by a county board of supervisors to designate a facility as an alternative jail and to maintain it as such." *Id.* We find no definition of a community correctional residential treatment facility in *Trecker*, as no party raised that issue, but we note the *Trecker* court determined "[n]either of these facilities may be construed to mean merely the equivalent of a jail, or a place where the defendant is confined." *Id.*

The legislature has outlined the corrections continuum as consisting of five levels. *See* Iowa Code § 901B.1. Levels one and two on the continuum consist of self-monitored and supervised probation and parole. *See id.* § 901B.1(1)(a), (b). Level three consists of the "[q]uasi-incarceration sanctions," which include

> those supported by residential facility placement or twenty-four hour
> electronic monitoring including, but not limited to, the following:
>     (1) Residential treatment facilities.
>     (2) Operating while intoxicated offender treatment facilities.
>     (3) Work release facilities.
>     (4) House arrest with electronic monitoring.
>     (5) A substance abuse treatment facility as established and
> operated by the Iowa department of public health or the department
> of corrections.

*Id.* § 901B.1(1)(c). Levels four and five include short-term and long-term incarceration in jail or prison. *See id.* § 901B(1)(d), (e).

It is Hensley's assertion that the Bridges program is "an alternate jail facility or a community correctional residential treatment facility" as provided in section

907.3(3). In Hensley's motion for a credit, he quoted from the Bridges's website, which at that time[2] stated the program was

> a licensed level 3.1[3] long term substance abuse treatment program housed at the West Wing of the Polk County Jail. Bridges of Iowa has forged a partnership with Polk County Board of Supervisors and the Polk County Sherriff and has received the opportunity to house our substance abuse treatment program in an unused wing at the jail facility.

Hensley further quoted from the Bridges's website that the participants "are referred to the program through the jail or prison system, through the court system, and through the 5th Judicial District Drug Court diversion program," but the program is staffed by private certified alcohol and drug counselors, not personnel from any state or county agency. Hensley asserts that if Bridges is not an alternate jail facility or a community correctional residential treatment facility, then no facility ever could qualify as such. The State did not respond to this claim in its appellate brief, but we note it conceded in its resistance to Hensley's motion for a credit that Bridges was "an independent residential treatment facility located in the Polk County Jail."

Ultimately, we determine Hensley has failed to prove the Bridges program is "an alternate jail facility" or a "community correctional residential treatment facility." Despite all of the information he provided about the Bridges program, our record is lacking proof the program is run under chapter 356A as an alternate jail facility or that it is run as a community correctional residential treatment facility.

---

[2] This court has been unable to confirm this quote from the Bridges's website as it appears the website has been modified since the filing of Hensley's motion for a credit in April 2016. In addition, Hensley did not submit as evidence any printout of the website, which would allow this court to verify the information quoted.

[3] The record on appeal does not define for us the meaning of this licensure.

Because we have insufficient evidence to determine the program falls into one of the two categories listed in section 907.3(3), we cannot conclude Hensley is entitled to a credit for the time he spent in the program. We therefore affirm the district court's denial of the credit.

**AFFIRMED.**