*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

ROBERT DAVIS,

        Plaintiff-Appellant,

V

SECRETARY OF STATE,

        Defendant-Appellee.

FOR PUBLICATION
September 16, 2020

No. 354622
Court of Claims
LC No. 20-000099-MM

Before: TUKEL, P.J., and METER and REDFORD, JJ.

METER, J (*concurring in part and dissenting in part*).

I concur with the majority's well-written opinion in all respects except for the analysis regarding MCL 168.759(3). In my view, a textual plain reading of the statute precludes defendant from distributing absentee voter ballot applications.

As the majority notes, MCL 168.759(3) provides:

> An *application* for an absent voter ballot under this section may be made in *any of the following ways*:
>
> (a) By a written request signed by the voter.
>
> (b) On an absent voter ballot application form provided for that purpose by the clerk of the city or township.
>
> (c) On a federal postcard application. [Emphasis added.]

Nowhere in these three provisions is defendant empowered to distribute, in an unsolicited manner, absentee ballot applications. Under the plain language of MCL 168.759(3)(b), the Legislature explicitly gave only local clerks the power to distribute absentee voter ballot applications. Because the Legislature declined to explicitly include defendant within MCL 168.759(3)(b), defendant lacked the authority to distribute absentee voter ballot applications. See *Mich Educ Ass'n v Secretary of State*, 489 Mich 194, 217-218; 801 NW2d 3 (2011) (quotation marks and citation omitted) ("Courts may not speculate regarding legislative intent beyond the words expressed in a

statute. Hence, nothing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself.").

Under MCL 168.759(3)(a), the plain language provides the application itself must be made by written request signed by the voter. I read this section as requiring the voter to make a written request for the application. It stands to reason that any ballot will require a written application under any subpart of MCL 168.759(3). Thus, the Legislature's specific provision under (3)(a) that the request for the *application* be signed by the voter cannot be viewed as stray language or surplusage. See *Apsey v Memorial Hosp*, 477 Mich 120, 127; 730 NW2d 695 (2007) ("[T]he Legislature is presumed to have intended the meaning expressed [in the statute] . . . [a]nd no word should be treated as surplusage or made nugatory."). The application herein was not obtained by the voter by a written request for the application from a proper authority (typically a local clerk). The application was sent to each voter in an unsolicited fashion by defendant, in derogation of any of the three permissive alternatives under MCL 168.759(3).

In short, in addition to a situation involving a federal postcard, e.g., military posted overseas, there are only limited ways that an absentee ballot may be procured. Again, these include the voter making a written request for an application, typically from a local clerk; or obtaining an absentee ballot application form provided by a local clerk. This latter alternative can typically be accomplished by a request other than in writing, such as through a telephonic call or a personal appearance at the local clerk's office. None of these prerequisites was met in this case.

Although the majority has determined that defendant had the authority to distribute absentee voter ballot applications under MCL 168.759(3), a textual plain reading of the statute does not support the determination. "If the language of a statute is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction is not permitted." *Herald Co v Bay City*, 463 Mich 111, 117-118; 614 NW2d 87 (2000). MCL 168.759(3) provides that a voter "may" obtain an absentee voter ballot application "in any of the following ways," which expressly limits the obtaining of an application to any of the three enumerated statutory options. MCL 168.759(3)(a) provides that "[a]n application for an absent voter ballot . . . may be made . . . [b]y a written request signed by the voter." The language of this provision clearly states that a voter may request, in writing, an application for an absent voter ballot. Likewise, MCL 168.759(3)(b) authorizes a local clerk to provide an application. Because defendant, who is not a local clerk, distributed absent voter ballot applications without written requests from the voters, defendant's actions cannot be deemed proper under MCL 168.759(3).

Further buttressing this conclusion is the doctrine of *expressio unius est exclusio alterius*, which is "the maxim that the expression of one thing means the exclusion of another . . . ." *Tuggle v Dept of State Police*, 269 Mich App 657, 663; 712 NW2d 750 (2005). The doctrine "is a rule of statutory interpretation meant to help ascertain the intent of the Legislature," and "does not subsume the plain language of the statute when determining the intent of the Legislature." *Id*. at 664. "It has been described as a rule of construction that is a product of logic and common sense. The doctrine characterizes the general practice that when people say one thing they do not mean something else." *Detroit City Council v Detroit Mayor*, 283 Mich App 442, 456; 770 NW2d 117 (2009) (quotation marks and citations omitted). MCL 168.759(3) expressly gives local clerks the authority to distribute absentee voter ballot applications. Nowhere in the statute is there a similar provision that grants defendant the same or similar authority. Therefore, under the doctrine of

*expressio unius est exclusio alterius*, the Legislature's inclusion of local clerk's authority to distribute absentee voter ballot applications operates to exclude defendant's authority to do same.

The ministerial power to distribute and process these applications is reserved to local clerks by law. It is important to distinguish between supervisory and ministerial powers. Under MCL 168.21, defendant is "the chief election officer of the state and shall have supervisory control over local election officials in the performance of their duties under the provisions of this act." Defendant's supervisory powers are enumerated in MCL 168.31. While defendant has the supervisory power to address and correct the delinquent or deficient performance of a local clerk regarding the clerk's duties under MCL 168.759(3), see MCL 168.31(1)(h) (mandating that defendant shall "[i]nvestigate, or cause to be investigated by local authorities, the administration of election laws, and report violations of the election laws and regulations to the attorney general or prosecuting attorney, or both, for prosecution"), the ministerial power to discharge those duties is reserved to the local clerk in the first instance, MCL 168.759(3). Thus, I would conclude that defendant violated MCL 168.759(3).

In short, MCL 168.759(3) does not specifically authorize defendant to send unsolicited applications for absentee voter ballots, and defendant's supervisory powers cannot be used to imbue defendant with an authority that the Legislature expressly declined to grant. Thus, I would reverse the Court of Claims' grant of summary disposition and remand for further proceedings.

/s/ Patrick M. Meter